RICHARD ALLEN GROVES, *an infant, etc.*

*v.*

ARCHIE P. GROVES

(No. 12634)

Submitted September 12, 1967.    Decided January 16, 1968.

2

*Hamstead & Hamstead, Ezra E. Hamstead, Richard E. Hamstead*, for appellant.

*Kenneth E. Kincaid, Mike Magro, Jr.*, for appellee.

HAYMOND, JUDGE:

In this civil action instituted December 2, 1965 in the Circuit Court of Monongalia County, the plaintiff, Richard Allen Groves, an infant who sues by his next friend and mother Helen Groves McIntyre, seeks to recover from the defendant, Archie P. Groves, his father, damages for personal injuries sustained by the plaintiff in an automobile accident on May 2, 1965, alleged to have been caused by the negligence and the wilful and wanton conduct of the defendant. To the complaint of the plaintiff the defendant filed his answer in which he denied the allegations of the complaint. Upon these pleadings and the testimony of several witnesses and certain instructions given by the court, the case was tried before a jury which rendered a verdict in favor of the plaintiff for $75,000.00 upon which, on May 10, 1966, the court entered judgment for the amount of the verdict with interest and costs.

At the conclusion of the evidence in behalf of the plaintiff and again at the conclusion of all the evidence the defendant made motions for a directed verdict in his favor and to vacate the judgment, all of which motions the court overruled, and on May 23, 1966 rendered final judgment, after refusing to set aside the verdict and the judgment of May

10, 1966. From the judgment of May 23, 1966, this Court granted this appeal on the application of the defendant.

The principal errors upon which the defendant seeks reversal of the judgment are (1) the refusal of the trial court to direct a verdict in his favor on the ground that the plaintiff, the unemancipated son of the defendant residing with and in the custody of the defendant who maintained and supported him, can not, under the parental immunity rule, maintain this action of tort against his father for injuries which were caused by his negligence and the additional ground that the injuries of the plaintiff were proximately caused or contributed to by the negligence of the plaintiff, and (2) the action of the trial court in instructing the jury upon the question of wilful, reckless and wanton conduct upon the part of the defendant and in refusing to instruct the jury upon the question of contributory negligence of the plaintiff.

The plaintiff tried the case upon the theory that his injuries resulted from wilful, reckless and wanton conduct, and not from ordinary negligence, of the defendant, and that the doctrine of parental immunity does not apply to wilful, reckless and wanton conduct.

The undisputed evidence shows that the plaintiff, an unemancipated infant fifteen years of age residing with, in the custody of, and maintained by his father, the defendant, was severely and permanently injured about six o'clock in the early morning of May 2, 1965, when the truck owned by the defendant but driven by the plaintiff on State Route 73 in Monongalia County, between Morgantown and Bruceton Mills in this State, while traveling at a rapid rate of speed, on its wrong side of the highway, collided with an automobile driven by John Pritchard, went out of control and ran against a tree near a cliff at a distance one hundred to one hundred and fifty feet from the point of the collision between the truck and the Pritchard automobile.

The plaintiff was confined in the hospital for a period of four months as a patient and as an inmate of the Rehabili-

tation Center at Charleston for a period of three months. While there on December 2, 1965, this action was instituted by his mother without the prior knowledge of the plaintiff who did not know that it had been instituted until after his release from the Rehabilitation Center about December 18, 1965 when he was told that it was for him to determine whether it should be dismissed and he decided to continue its prosecution. His father and mother were divorced in 1964 and though the plaintiff saw her occasionally there is evidence that after she married her second husband sometime before her son's injury she saw him only infrequently and did not give him attention to any great extent. She did not testify in the case. She and the plaintiff who resided with his maternal grandparents from time to time were friendly as were the plaintiff and his father although the plaintiff testified that his father mistreated him at times when he was intoxicated which happened frequently. This the defendant denied and testified that he tried to do all he could for the plaintiff and did not know of any instances in which he mistreated the plaintiff.

The evidence is conflicting as to the manner in which the accident happened and as to the alleged intoxication of the defendant; and certain statements of both the plaintiff and the defendant were contradicted by other witnesses.

The plaintiff testified that after he and the defendant came home from their work on the evening of May 1, 1965, they went for a ride in the defendant's truck and gave this version of the accident and the facts preceding it: The defendant drove until after they visited two road houses, at each of which he drank beer and whiskey. When they left the second place, the plaintiff, because of the intoxicated condition of the defendant, drove the truck until they came to a place known as Pisgah. After leaving Pisgah they went, with the defendant again driving, to the home of their friends, Albert and Lula Walls, about a mile from Bruceton Mills where they remained from about eleven thirty o'clock until about five o'clock the following morning when they began their return to their home. After they had been at the Walls home for some

time and before they started for home they went with the Wallses to a place near Albright and obtained whiskey from a colored man and returned to the Walls home. While at the Walls home the defendant had several drinks of whiskey and was intoxicated when they left for home. For that reason the plaintiff drove the truck to the scene of the accident. Just before the accident the defendant, who had been asleep was awakened when the truck hit a small bump in the road and jarred his head against the dashboard, gave the plaintiff a wild look and put his hand on the steering wheel and his foot on the accelerator, which increased the speed of the truck. The plaintiff struggled with the defendant to gain control of the truck but was unable to do so because the defendant was stronger than the plaintiff. The defendant said nothing, the plaintiff did not see any other automobile or know that the truck had collided with another automobile, and knew nothing until he awoke and saw the truck against a tree which was in front of the truck. The plaintiff was "hanging out" the left window and the defendant was thrown through the windshield and part of his body was lying on the hood of the truck. Both were injured and were removed from the truck and taken to the hospital.

The plaintiff gave a different version of the accident when he first talked to a State Trooper who investigated it a short time after the plaintiff was admitted to the hospital. The trooper talked to the plaintiff on two occasions while he was in the hospital and the plaintiff testified that in the first conversation he told the trooper that the defendant was driving the truck at the time of the accident and that the plaintiff tried to take the steering wheel from the defendant but that before the trooper left the room on that occasion the plaintiff said that he changed his statement and told the trooper that he was driving the truck. The trooper in his testimony contradicted the plaintiff's testimony that he changed his statement in their first conversation. According to the trooper the plaintiff did not change his statement until their second conversation some days later when the plaintiff's mother was present in the hospital. The plaintiff also testified that the defen-

dant wanted him to testify falsely that an animal had run across the road and caused the accident and also that they had picked up a hitchhiker and taken him to Bruceton Mills but that the plaintiff told the defendant that he would not do so. This testimony of the plaintiff was denied by the defendant in his testimony.

The defendant testified that before the accident while in the right seat of the truck he had fallen asleep and that at the time of the accident he was asleep and did not awaken until after the crash. He also testified that he was not intoxicated and that he and the plaintiff and the Wallses did not leave their home to obtain whiskey and that he did not drink whiskey during his stay at the Walls home. In this he is corroborated by both of the Wallses. There was, however, considerable evidence that the defendant was intoxicated at the time of the accident. In addition to the testimony of the plaintiff two of the persons who saw the defendant at the scene testified that he was intoxicated, two witnesses who saw him at the hospital said he was or appeared to be intoxicated, and one of the doctors who saw and treated him at the hospital said he was intoxicated and the other doctor said that the defendant told him that he had had two or three drinks; and the defendant admitted that he had previously been several times arrested for and convicted of intoxication.

The decisive question for determination is whether, upon the evidence disclosed by the record, the plaintiff has shown and established a cause of action against the defendant.

As already indicated the plaintiff tried the case on the theory that the defendant was guilty of wilful and wanton conduct which caused the injuries to the plaintiff. There is a valid distinction between negligence and wilful and wanton conduct. The difference is indicated by this Court in *Korzun* v. *Shahan*, 151 W. Va. 243, 151 S. E. 2d 287; *Kelly* v. *Checker White Cab, Inc.,* 131 W. Va. 816, 50 S. E. 2d 888; *Stone* v. *Rudolph*, 127 W. Va. 335, 32 S. E. 2d 742; and *Todorobak* v. *McSurley*, 107 W. Va. 372, 148 S. E. 323. In the *Kelly* case, in which this Court said that the conduct of the driver of the taxicab of the defendant in continuing

to drive at a rapid rate of speed upon a road in a slippery, icy and hazardous condition, between Charleston and Spencer and return until the taxicab skidded off the road and injured the plaintiff who was either a trespasser or a licensee in riding in the taxicab in violation of the rules of its owner, amounted to negligence but did not constitute wilful and wanton conduct, the opinion contains these statements: "It is often difficult, in a particular situation, to distinguish between acts of negligence and acts which constitute willful and wanton conduct. The law, however, recognizes a clear and valid distinction between them. The difference is indicated by this Court in the case of *Stone* v. *Rudolph,* 127 W. Va. 335, 32 S. E. 2d 742. The opinion cites with approval the Virginia case of *Thomas* v. *Snow,* 162 Va. 654, 174 S. E. 837, and in quoting from the *Thomas* case used this language: 'Negligence conveys the idea of heedlessness, inattention, inadvertence; willfulness and wantonness convey the idea of purpose or design, actual or constructive. In some jurisdictions they are used to signify a higher degree of neglect than gross negligence. "In order that one may be held guilty of willful or wanton conduct, it must be shown that he was conscious of his conduct, and conscious, from his knowledge of existing conditions, that injury would likely or probably result from his conduct, and that with reckless indifference to consequences he consciously and intentionally did some wrongful act or omitted some known duty which produced the injurious result." 29 Cyc 510.' The Virginia Court, in *Friedman* v. *Jones,* 166 Va. 65, 184 S. E. 186, has also said that, "Willful or wanton conduct imports knowledge and consciousness that injury will result from the act done.' "

The jury evidently believed the plaintiff's version of the accident which was, in substance, that the defendant, who was intoxicated, was awakened by the bump in the road and immediately gave the plaintiff a wild look and grabbed the steering wheel and placed his foot on the accelerator and increased the speed of the truck and caused the plaintiff to lose control and drive it into the tree on the wrong side of the highway. These acts constitute negligence but do not constitute wilful and wanton conduct. The sudden awaken-

ing of the intoxicated defendant as a result of the bump in the road by the truck and his immediate effort to get control of the steering wheel indicate no intention or design to cause an injury. The same is true of the defendant's willingness to permit the infant plaintiff, an unlicensed driver, to operate the truck as he considered the plaintiff to be a capable driver who had frequently driven the truck without any previous mishap or accident.

As the evidence shows mere negligence but not wilful and wanton conduct by the defendant, this case is within the rule of parental immunity and under that rule the evidence does not establish a cause of action of the plaintiff.

In view of the failure of the evidence to establish wilful and wanton conduct by the defendant or any cause of action which the plaintiff can maintain against the defendant, this case can not be distinguished from *Securo* v. *Securo,* 110 W. Va. 1, 156 S. E. 750, and the decision in the case at bar is controlled by the holding in that case. In the *Securo* case this Court held in the syllabus that "An unemancipated infant may not maintain against his parent an action for damages for personal injury caused by the parent's negligence in driving his automobile wherein the child was a passenger." The parental immunity rule is recognized and applied in numerous jurisdictions, as indicated in 19 A.L.R. 2d 439, and, though there are decisions to the contrary, the cases that adhere to the parental immunity rule constitute the weight of authority.

The plaintiff having failed to establish a cause of action against his parent the defendant, the circuit court should have sustained the motion of the defendant for a directed verdict or have given Instruction No. 1 offered by the defendant which would have directed the jury to return a verdict for the defendant, and its refusal to do either constituted reversible error.

Whether an unemancipated infant has and may maintain a cause of action against a parent for damages for personal injury caused by wilful and wanton conduct of the parent need not be, and is not, considered or determined on this appeal.

It was also reversible error for the circuit court to give instructions offered by the plaintiff on the question of wilful and wanton conduct for the reason that such instructions were not sustained by evidence of wilful and wanton conduct. This Court has held that it is reversible error to give an instruction which is not sustained by the evidence. Point 3, syllabus, *Ballengee* v. *Whitlock,* 138 W. Va. 58, 74 S. E. 2d 780; Point 6, syllabus, *Kuykendall* v. *Fisher,* 61 W. Va. 87, 56 S. E. 48, 8 L.R.A., N. S., 94, 11 Ann. Cas. 700.

Inasmuch as the plaintiff has failed to establish a maintainable cause of action against the defendant it is unnecessary to discuss or consider further the action of the circuit court in giving or refusing instructions or in ruling upon any other questions involved in this action.

The judgments of the circuit court are reversed, the verdict is set aside and this action is remanded to the circuit court for a new trial which is here awarded the defendant.

*Reversed and remanded.*