Ruth GREENE, Administratrix, d.b.n. of the Estate of Timothy U. Basti, Deceased, Appellant,

v.

Dominic F. BASTI, Appellee.

No. 16714.

United States Court of Appeals Third Circuit.

Argued Nov. 24, 1967.

Decided March 25, 1968.

3. Spielberg Mfg. Co., 112 NLRB 1080, 1082 (1955).

Clyde W. McIntyre, Hurwitz, Klein, Benjamin & Brown, Harrisburg, Pa., for appellant.

Richard B. Wickersham, Metzger, Wickersham & Knauss, Harrisburg, Pa. (Richard H. Wix, Harrisburg, Pa., on the brief), for appellee.

Before HASTIE, FREEDMAN and VAN DUSEN, Circuit Judges.

## OPINION OF THE COURT

VAN DUSEN, Circuit Judge.

■ This appeal asks reversal of a district court order granting a Motion to Dismiss this Wrongful Death and Survival suit which was brought for the death of an unemancipated minor child allegedly caused by his father's negligence. The appellant is the administratrix of Timothy U. Basti, a deceased minor, who died as a result of an automobile accident September 28, 1965. The appellee, defendant below, is Dominic F. Basti, father of the deceased minor and driver of the automobile that left the road with fatal results for his minor son. Maria C. Basti, mother of the deceased minor and wife of Dominic, was originally administratrix of her son's estate, having been granted letters on December 9, 1965. However, approximately five months later, on May 18, 1966, Maria C. Basti petitioned to resign, and the present administratrix, d. b. n., Ruth Greene, was appointed June 1, 1966. Greene, a citizen of New Jersey, filed a complaint in the court below on June 13, 1966, against the decedent's father, a citizen of Pennsylvania. Approximately a month later, Maria C. and Dominic F. Basti were divorced by a decree granted on July 12, 1966.

Since the jurisdiction of the court is founded on diversity,[1] Pennsylvania law

---

1. Corabi v. Auto Racing, Inc., 264 F.2d 784, 75 A.L.R.2d 711 (3d Cir. 1959); Jamison v. Kammerer, 264 F.2d 789 (3d Cir.), cert. den. 361 U.S. 813, 80 S.Ct. 52, 4 L.Ed.2d 61 (1959); Borror v. Sharon Steel Company, 327 F.2d 165 (3d Cir. 1964). While, as in this case, such "manufactured diversity" may seem in-

controls our decision, Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and our determination should be that of the Pennsylvania Supreme Court in a similar case, King v. Order of United Commercial Travelers of America, 333 U.S. 153, 161, 68 S.Ct. 488, 92 L.Ed. 608 (1948). The court below dismissed the appellant's cause of action under both the Wrongful Death Act (12 P.S. § 1602 ff.) and the Survival Act (20 P.S. § 320.601) which will be discussed in that order.

## I. *Wrongful Death Action (12 P.S. § 1602 ff.)*

The court below granted the appellee's motion to dismiss the Wrongful Death Action on the theory that the suit was barred by the interspousal immunity which prevents the wife, Maria, from suing the husband, Dominic. Furthermore, the court added, the suit was likewise barred by the doctrine of imputed negligence, the husband's negligence in causing his son's death being attributable to the wife and preventing her recovery of any damages. For the reason given below we think the lower court correctly followed the Pennsylvania law in dismissing the Wrongful Death Action.

■■ As a statutory right, a Wrongful Death Action gives a potential recovery to the decedent's dependents as against a tortfeasor causing the death. The recovery belongs directly to the applicable members of the statutory class notwithstanding the fact that the action is brought for them by the decedent's personal representative. Funk v. Buckley & Co., 158 Pa.Super. 586, 45 A.2d 918 (1946). Legal infirmities of those who sue for Wrongful Death such as contributory negligence or a release are valid defenses against them, e. g., Burns v. Goldberg, 210 F.2d 646 (3d Cir. 1954); Schetter v. United States, 136 F.Supp. 931 (W.D.Pa.1956).

■ That the Pennsylvania doctrine of imputed negligence serves as such a valid defense for Dominic Basti in this case is clear from the decision in Parks v. Parks, 390 Pa. 287, 135 A.2d 65, 74 (1957), citing Connelly v. Kaufmann & Baer Company, 349 Pa. 261, 37 A.2d 125 (1944). In Parks v. Parks, part of the claimed recovery was for a husband-father suing, in his own right, the wife-mother for damages suffered as a result of injuries to the child. As an alternative ground for holding the father unable to sue, the court held that the mother's negligence, alleged by the father, was a bar to the father's suit. The Pennsylvania courts would apply this rule to this case. See also e. g., Darbrinsky v. Pennsylvania Co., 248 Pa. 503, 94 A. 269 (1915); Riesberg v. Pittsburgh & Lake Erie Railroad Company, 407 Pa. 434, 180 A.2d 575 (1962).[2]

As an alternative defense to the Wrongful Death Action, the Pennsyl-

---

consistent with the intentions of the authors of our Constitution and may force the Federal Courts to decide difficult questions of State law that might well be avoided, this Circuit has allowed the citizenship of personal representatives or guardians to establish diversity for many years. See Fallat v. Gouran, 220 F.2d 325 (3d Cir. 1955). It is noted that the first two 'decisions cited above were unanimous decisions by the full court sitting *en banc* so this panel would have no authority to overrule them. Although the approach of this circuit has been criticized, see e. g., 3A Moore, Federal Practice ¶ 17.04 (1967), cf. Cohan and Tate, Manufacturing Federal Diversity Jurisdiction by the Appointment of Representatives: Its Legality and Propriety, 1 Vill.L.Rev. 201 (1956), this case presents no more aggravated a factual situation than the Corabi case, supra, 264 F.2d at 785, where the substitution of administrators was explicitly requested "in order that Letters * * * may be granted to a non-resident for the purpose of such * * * [a federal diversity] action."

2. Appellant asserts that except for Parks v. Parks, supra, 135 A.2d at 74, the decisions establishing the doctrine of imputed negligence as between spouses all involve suit against a third party. Having drawn the distinction, however, no reason is adduced why any different application should be made of such precedents in the present case.

vania Supreme Court's rule is that common law interspousal immunity from suit for tort continues today as a bar to a suit by a wife against her husband for Wrongful Death, e. g., McSwain v. McSwain, 420 Pa. 86, 215 A.2d 677 (1966). In view of the Pennsylvania decisions cited in the preceding paragraph, it is not necessary to reach this alternative ground. Accordingly, the dismissal of the Wrongful Death Action (12 P.S. § 1602 ff.) will be affirmed, as to all items other than the claim for funeral expenses under 12 P.S. § 1604.

As to these funeral expenses, appellant in her brief has argued that the Wrongful Death Action should be sustained at least to allow the administratrix, d. b. n., to recover such expenses. Although appellee is correct that the terms of 12 P.S. § 1602 (Act of April 26, 1855, as amended April 1, 1937) prevent recovery for funeral expenses since the deceased is survived by his parents, the administratrix, d. b. n., is able to sue for funeral expenses under the literal terms of 12 P.S. § 1604 (Act of May 13, 1927),[3] since she is a "person * * * who [is] * * * authorized by law to * * * bring an action to recover damages for a death * * *," under Rule 2202 of Pa.Rules of Civil Procedure, 12 P.S. Appendix.[4] It is noted that 12 P.S. § 1604 only gives a cause of action if the administratrix "has paid or incurred such funeral expenses," and that in paragraph 13 of the complaint the decedent's mother claims damages for such

expenses. However, the personal representative (appellant) demanded judgment under the Wrongful Death Act, and it is possible that such personal representative has "paid or incurred such expenses." It may well be that the parents, or either of them, in their capacity as parents, paid these funeral expenses, in which event 12 P.S. § 1604 is inapplicable according to its terms. But this cannot be determined from the record before us.

■ The court has pendent jurisdiction of this claim for funeral expenses under the Wrongful Death Act, 12 P.S. § 1604, even though the amount involved is less than $10,000. See Borror v. Sharon Steel Company, supra.[5]

## II.  Survival Action [6]

■ A Pennsylvania Survival Action rests on a different theory of recovery than a cause of action under the Wrongful Death Act. The court below, however, granted appellee's motion to dismiss the Survival Action for essentially the same reasons as it granted the dismissal of the Wrongful Death Action: interspousal immunity and imputed negligence. In doing so, it failed to follow what appears to be the law in Pennsylvania.

The appellee argues that the normal incapacity of a minor unemancipated child to sue its parent is not removed by the death of the child. Since a Survival Act allows a cause of action that arises before death to be brought after death

---

3. In Radobersky v. Imperial Volunteer Fire Department, 368 Pa. 235, 81 A.2d 865, 869 (1951) the court recognized the effectiveness of this Act. See also Ferne v. Chadderton, 363 Pa. 191, 69 A.2d 104, 107–108 (1949).

4. See Funk v. Buckley & Co., supra, 45 A.2d at 921. Cases such as Potter Title & Trust Co. v. Petcoff, 122 Pa.Super. 540, 186 A. 320 (1936) are not to the contrary since decided before the effective date of Rule 2202 (effective Sept. 4, 1939).

5. In determining that this court has pendent jurisdiction of the cause of action under the Pennsylvania Wrongful

Death Act (12 P.S. § 1604), we rely on the reasoning in Part III of Borror v. Sharon Steel Company, supra, 327 F.2d at 172–174 which is based on the complementary nature of the above Act and the Pennsylvania Survival Act (20 P.S. § 320.601) and Rule 213(e) of the Pa. Rules of Civil Procedure, 12 P.S.Appendix. See Funk v. Buckley & Co., supra, 45 A.2d at 920.

6. 20 P.S. § 320.601: "All causes of action or proceedings, real or personal, except actions for slander or libel, shall survive the death of the plaintiff or the defendant, or the death of one or more joint plaintiffs or defendants."
See also 20 P.S. § 320.603.

by the decedent's representative, the appellee makes a literal argument: Timothy U. Basti couldn't sue his father when alive; thus there was no cause of action existing that "survived" his death and passed to his personal representative. However, the Pennsylvania courts have ruled that death ends an immunity based on the policy of preserving domestic peace and felicity and hence the cause of action exists, the immunity being merely procedural. Johnson v. Peoples First National Bank & Trust Co., 394 Pa. 116, 145 A.2d 716, 717 (1958). Relying on dicta in Parks v. Parks,[7] supra, appellee argues that the immunity expires only when the person protected by the immunity dies.[8] Appellee points out in support of this position, that no Pennsylvania case has been found which has allowed suit by a deceased unemancipated child's estate against an allegedly negligent living parent.

Although this argument may have some merit, we are faced with Pennsylvania cases which suggest that "avoidance of collusion" is a policy behind inter-family immunity along with the policies of promotion of family unity and avoidance of discord and disturbance stressed by appellee. See e. g., Parks v. Parks, supra, 135 A.2d at 71. If this policy "against collusion," for instance, were the most important one for a court to protect, death by either family member, plaintiff or defendant, should arguably cause the same result.[9]

The arguments based on "policy" being thus inconclusive, we turn to the existing Pennsylvania appellate court decision which requires the reversal of the lower court's dismissal of the Survival Action in this case. Fisher v. Dye, 386 Pa. 141, 125 A.2d 472, 475 (1956); adopting Burns v. Goldberg, 210 F.2d 646 (3d Cir. 1954). It is noted that in dismissing the Survival Action on the grounds of interspousal immunity and imputed negligence, the District Court "pierced" Timothy U. Basti's estate and found that his mother was the only interested beneficiary. But unlike the Wrongful Death Action, this cannot be done under the Survival Act, Fisher v. Dye, supra. As our decision in Burns v. Goldberg, supra, 210 F.2d at 650, pointed out, concern over whether the mother, as opposed to creditors of the deceased minor or other parties, will take a share of the child's estate should be resolved in the Orphans Court at the time of distribution, not when deciding whether a decedent's representative may sue a living parent. In a case such as this, the Orphans Court would be an appropriate and available forum for deciding any state policy issues that may exist to prevent a wife-mother to benefit from suing a husband-father over the death of their child.[10]

The decision of the lower court will be reversed and remanded for proceedings in accordance with the foregoing opinion.

7. 135 A.2d at 71: " * * * the doctrine of intrafamily immunity from suit by a member of the family expires upon the death of the person protected * * *. Thus, although there may be immunity from suit between parent and child during life, the immunity does not extend to the personal representative of a deceased parent or child."

8. By so viewing the problem as one of *immunities*—(as opposed to a child's *incapacity* to sue his parent which is then removed by death)—the appellee's position has a logical appeal turning on a "policy" argument. The damage to family peace and unity would appear to result from a family member being forced to pay, or defend a suit, or cooperate with an insurance carrier in defense of one. See e. g., Parks v. Parks, supra, at 73. Accordingly, the argument goes, only when the family member sued has died, should the immunity be disregarded.

9. The death of either family member would appear to destroy all intra-family immunities because death defeats "the policy" behind the rule. See Johnson v. Peoples First National Bank & Trust Co., supra, 145 A.2d at 718.

10. We reject appellant's argument that the presence of insurance changes the rules in such suits as this, see e. g., Parks v. Parks, supra, 135 A.2d at 73.