EUGENE F. CHASE, *Executor of the Estate of Rosalie R. Chase*

*v.*

GREYHOUND LINES, INC., *a corporation;*
HENDERSON MANUFACTURING COMPANY, *a corporation;*
RIDGE RUNNER INDUSTRIES, INC., *a corporation;*
*and* STEPHEN E. CHASE

(No. CC 884)

Submitted January 10, 1973.     Decided February 27, 1973.

Concurring Opinion March 27, 1973.

*Frank V. Sansalone,* for plaintiff.

*Furbee, Amos, Webb & Critchfield, Alfred J. Lemley,* for defendants.

SPROUSE, JUDGE:

This case, which is before the Court on certification from the Circuit Court of Marion County involves a civil action instituted in that court by the plaintiff, Eugene F. Chase, as the executor of the estate of his wife, Rosalie R. Chase, against Greyhound Lines, Inc., Henderson Manufacturing Company, Ridge Runner Industries, Inc., and Stephen E. Chase, as the defendants, to recover damages for the death of the plaintiff's decedent. However, the questions certified for decision relate solely to whether the civil action may be maintained against the defendant, Stephen E. Chase, who is the natural son of the plaintiff and his deceased wife.

On the 19th day of July, 1971, the defendant Stephen E. Chase, then sixteen years of age and an unemancipated child, was driving a 1968 Ford truck which was owned by the plaintiff in his individual capacity. The family had been attending a religious meeting near Harrisburg, Pennsylvania, and while there utilized a "camper". On the trip from Harrisburg to Marion County, West Virginia, the defendant Stephen E. Chase, was driving the truck which pulled the camper. The deceased, Rosalie R. Chase, was riding in the camper. At a place near Napier Township, Bedford County, Pennsylvania, on the Pennsylvania Turnpike, the camper was struck in the left rear by a bus owned by Greyhound Lines, Inc. As a result of the collision, Rosalie R. Chase was thrown from the camper, and died as a result of the injuries she received. On August 3, 1971, the plaintiff was appointed and duly qualified as the executor of the estate of his deceased wife. The decedent left the following survivors: Her surviving spouse, Eugene F. Chase; surviving children: Stephen E. Chase, Trujean Chase, Mary Jo Bates, Rebecca Pitrolo, Kathleen McCarty, Nancy Long, Glenna Chicas and Elizabeth Fawcett.

The plaintiff filed his complaint in the Circuit Court of Marion County, West Virginia, in July, 1972. The defendant, Stephen E. Chase, on September 15, 1972, moved to dismiss the complaint against him on the ground that the plaintiff's cause of action against him was barred by the public policy of the law of this State which prohibits an action for personal injuries between a parent and child. A stipulation between counsel for the plaintiff and the defendant, Stephen E. Chase, concerning the essential facts of the case was attached to and made a part of the motion to dismiss.

By an order entered on October 17, 1972, the Circuit Court of Marion County granted the defendant's motion to dismiss the complaint, and directed that the ruling be certified to this Court, staying the proceedings in the action pending the decision of the questions certified.

The questions certified by the Circuit Court of Marion County, upon its own motion and the motion of counsel for the plaintiff, are as follows:

"1. Can the executor of a deceased mother maintain an action in West Virginia, under the Pennsylvania law, for the wrongful death, alleging simple negligence, against a surviving unemancipated child for damages arising out of an accident causing the death of the mother, where the beneficiaries named are infant and adult sisters of the defendant, the father, and the defendant.

"2. Can the said executor maintain said action in West Virginia, under the Pennsylvania law, for the funeral expenses and other expenses, the recovery of which is demanded in the complaint."

Although the circuit court's inquiry consists of two questions, it is essentially comprised of four basic questions, each requiring separate examination under our public policy relating to intrafamily immunity. The four basic parts to the certified questions are treated separately: Can such an action as the instant one be maintained against the infant defendant son when the

beneficiaries are (1) the infant and adult sisters of the defendant; (2) the father; (3) the defendant; and (4) the father as executor to the extent of the funeral expenses?

The wrongful death complained of in this action occurred in Pennsylvania. The wrongful death statutes of that Commonwealth, therefore, govern the substantive law applicable to this case unless barred by our public policy. This Court has held repeatedly that the substantive law of the lex loci shall apply in transitory actions unless contrary to the public policy of the lex fori. *Lambert v. The Great Atlantic and Pacific Tea Company,* 155 W.Va. 397, pt. 1 syl., 184 S.E.2d 118; *Edwards v. Lynch,* 154 W.Va. 388, pt. 1 syl., 175 S.E.2d 632; *Thornsbury v. Thornsbury,* 147 W.Va. 771, pt. 1 syl., 131 S.E.2d 713; *Poling v. Poling,* 116 W.Va. 187, 179 S.E. 604.

The applicable provisions of the wrongful death statutes of Pennsylvania are as follows:

> 12 P.S. § 1601: "Whenever death shall be occasioned by unlawful violence or negligence, and no suit for damages be brought by the party injured during his or her life, the widow of any such deceased, or if there be no widow, the personal representatives may maintain an action for and recover damages for the death thus occasioned."

> 12 P.S. § 1602: "The persons entitled to recover damages for any injuries causing death shall be the husband, widow, children, or parents of the deceased, and no other relatives; * * * and the sum recovered shall go to them in the proportion they would take his or her personal estate in case of intestacy, and that without liability to creditors under the laws of this Commonwealth. * * * "

> 12 P.S. § 1604: " * * * and plaintiff may also recover the reasonable funeral expenses of the deceased, if plaintiff has paid or incurred such expenses."

The uncontroverted interpretation of these statutes by the courts of Pennsylvania is that a cause of action for

wrongful death accrues directly to the beneficiaries specifically designated by statute. *Greene v. Basti,* 391 F.2d 892, 894 (3rd Cir.); *Pezzulli v. D'Ambrosia,* 344 Pa. 643, 26 A.2d 659; *Kaczorowski v. Kalkosinski,* 321 Pa. 438, 440, 184 Atl. 663, 664.

Under Pennsylvania law the negligence of a beneficiary does not prohibit recovery under the wrongful death statutes unless no other members of the group exist. Such negligence on the part of a beneficiary merely prevents him from sharing in any recovery. *Burns v. Goldberg,* 210 F.2d 646, 649 (3rd Cir.); *Stafford v. Roadway Transit Co.,* 70 F. Supp. 555; *Minkin v. Minkin,* 336 Pa. 449, 7 A.2d 461.

An action for wrongful death may be brought in Pennsylvania by an administrator or executor of the estate of a deceased person. Such an action, however, is maintainable not for the benefit of the estate of the deceased person but rather for the benefit of specifically enumerated beneficiaries. *Funk v. Buckley & Co.,* 158 Pa. Super. 586, 45 A.2d 918; *Minkin v. Minkin,* 336 Pa. 449, 7 A.2d 461. The Superior Court of Pennsylvania held in the *Funk* case that an action for wrongful death is based upon the "liability of the tort-feasor to decedent's dependents, notwithstanding that * * * the action is brought for them by the personal representatives". *Funk v. Buckley, supra* at 591, 45 A.2d at 921. Moreover, under the provisions of Pa. R.C.P. 2202 (b), which applies only to wrongful death actions, if no action is commenced within a period of six months after the death of the decedent, then the action may be brought "by any person entitled by law to recover damages in such action as trustee ad litem on behalf of all persons entitled to share in damages".

When Rosalie R. Chase died on the highways of Pennsylvania, a right of action was created under the Pennsylvania wrongful death statutes against the defendant son, Stephen E. Chase, for the direct benefit of her husband and children, except the defendant son, Stephen.

It is the Pennsylvania law that damages may be recovered on behalf of any of the beneficiary individuals who have actually paid or committed themselves to be obligated for payment of funeral expenses. 12 P.S. § 1604; *Greene v. Basti,* 391 F.2d 892, 895 (3rd Cir.) ; *Stafford v. Roadway Transit Co.,* 70 F. Supp. 555; *German v. Riddle,* 149 Pa. Super. 647, 27 A.2d 680; *Pezzulli v. D'Ambrosia,* 344 Pa. 643, 26 A.2d 659; *Gannon v. Lawler,* 34 D. & C.

In the instant case, the complaint alleges that as a result of the death of Rosalie R. Chase, "the plaintiff, as executor, has incurred funeral expenses of $1,470.17". If this action for damages had taken place in Pennsylvania, the husband clearly then would have been permitted to seek those funeral expenses as part of the damages.

The substantive law of Pennsylvania as it relates to this case, then, is that the personal representative father could maintain an action for wrongful death against his defendant son: (1) Where the father is the beneficiary; (2) where the infant and adult brothers and sisters are beneficiaries; (3) where funeral expenses have been incurred by the father; (4) where the defendant son is one of a class of beneficiaries, but the defendant son could not participate in the recovery.

Since there have been considerable developments of late in a number of jurisdictions relating to public policy questions governing immunity against intrafamily personal injury actions, and since the law of our sister state, the lex loci, would so clearly allow these actions, we consider again the question of our public policy in this field of law as it relates to the questions presented here.

The defendant son, Stephen E. Chase, would not be permitted to be included as a beneficiary even under the substantive law of Pennsylvania. *Burns v. Goldberg,* 210 F.2d 646, 649 (3rd Cir.) ; *Stafford v. Roadway Transit Co.,* 70 F. Supp. 555; *Minkin v. Minkin,* 336 Pa. 449, 7 A.2d 461. The circuit court's inquiry concerning him is quickly answered in the negative.

Looking at the other questions in the order in which they are presented, first is the effect of the executor father as a prospective beneficiary in the wrongful death action. To answer this is to look fully at the parent-child immunity doctrine.

Although the public policy against intrafamily suits in personal injury and wrongful death actions is apparently still the majority rule in the United States, there has been much pressure for revising or abolishing it in recent years.

An ancient principle of common law prohibited actions for tort between husband and wife. II POLLACK AND MAITLAND, THE HISTORY OF ENGLISH LAW 436 (2d ed.). The rule was based primarily on the fiction that the wife and husband in terms of legal identity were one person. No similar law apparently existed at common law concerning suits between parent and child. Annot., 19 A.L.R.2d 423, 429 and cases cited therein; 59 AM. JUR. 2d, *Parent and Child,* Section 151, page 252, and cases cited therein. The principle of immunity between parent and child was adopted, however, during the early development of American common law. *Hewellette v. George,* 68 Miss. 703, 9 So. 885 (1891); *Gould v. Christianson,* 10 F. Cas. 857 (No. 5636) (D.C.N.Y.).

These cases and eventually those in other American jurisdictions established the firm principle that public policy considerations banned actions for personal injury between husband and wife, and between parent and unemancipated children. Annot., 19 A.L.R.2d 423; 41 AM. JUR. 2d, *Husband and Wife,* Section 522, pages 443-44; PROSSER, TORTS, Chapter 22, Section 122, pages 862-63 and 865-66 (4th ed.); 59 AM. JUR. 2d, *Parent and Child,* Section 151, page 252.

After the initial beachhead by these two early American opinions, i.e. *Hewellette* and *Gould, supra,* prohibition against intrafamily actions became the public policy of the vast majority of American jurisdictions. These related rules of law in husband-wife and parent-child actions for

personal injury continued as accepted and wise law until recent years. In the past several years, however, the validity of the doctrine has been questioned and attacked by some text writers and others in the non-judicial community. PROSSER, TORTS, Chapter 22, Section 122 (4th ed.) and the cases and articles cited therein. Annot., 41 A.L.R.3d 904, and the cases and articles cited therein.

In the last ten years, fourteen states have repudiated the doctrine in whole or in part and now permit suits between parent and child, and/or husband and wife. *Hebel v. Hebel,* 435 P.2d 8 (Ala.); *Streenz v. Streenz,* 106 Ariz. 86, 471 P.2d 282; *Gibson v. Gibson,* 3 Cal. 3d 914, 479 P.2d 648; *Petersen v. City and County of Honolulu,* 51 Hawaii 484, 462 P.2d 1007; *Schenk v. Schenk,* 100 Ill. App. 2d 199, 241 N.E.2d 12; *Rigdon v. Rigdon,* 465 S.W.2d 921 (Ky.); *Plumley v. Klein,* 388 Mich. 1, 199 N.W.2d 169; *Silesky v. Kelman,* 281 Minn. 431, 161 N.W.2d 631; *Briere v. Briere,* 107 N.H. 432, 224 A.2d 588; *France v. A.P.A. Transport Corp.,* 56 N.J. 500, 267 A.2d 490; *Gelbman v. Gelbman,* 23 N.Y.2d 434, 245 N.E.2d 192; *Nuelle v. Wells,* 154 N.W.2d 364 (N.D.); *Falco v. Pados,* 444 Pa. 372, 282 A.2d 351; *Goller v. White,* 20 Wis. 2d 402, 122 N.W.2d 193.

The rationale of the cases in overturning this peculiarly American common law doctrine varies somewhat. The reasoning in most, taken together, seems to be that usually a solid family relationship will govern when a suit should be brought and when it should not. That if such action would be disruptive to a family life, then the intrafamilial relationship in that family has in all probability been destroyed a long time before such action ever reached the court. On the contrary, a sensible resolution of a damage problem arising out of an intrafamily accident would strengthen rather than weaken the much desired unity of the familial structure.

In *Goller v. White, supra,* the Court indicated that the doctrine should remain in two situations: "(1) Where the alleged negligent act involves an exercise of parental authority over the child; and (2) where the alleged

negligent act involves an exercise of ordinary parental discretion with respect to the provision of food, clothing, housing, medical and dental services, and other care". *Goller v. White, supra* at 413, 122 N.W.2d at 198. *Accord, Rigdon v. Rigdon,* 465 S.W.2d 921 (Ky.).

Most of the jurisdictions overturning the doctrine do it only in part, and retain the same exceptions in one form or another as first set forth in *Goller.*

West Virginia is among a number of states which have recently considered these rules of public policy and steadfastly refused to depart from this 80-year old American composite of precedent. *Adams v. Grogg,* 153 W.Va. 55, 166 S.E.2d 755; *Groves v. Groves,* 152 W.Va. 1, 158 S.E.2d 710; *Freeland v. Freeland,* 152 W.Va. 332, 162 S.E.2d 922; *Begley v. Kohl and Madden Printing Ink Co.,* 157 Conn. 445, 254 A.2d 907; *Orefice v. Albert,* 237 So. 2d 142 (Fla.); *Barlow v. Iblings,* 261 Iowa 713, 156 N.W.2d 105; *Skinner v. Whitely,* 281 N.C. 476, 189 S.E.2d 230; *Felderhoff v. Felderhoff,* 473 S.W.2d 928 (Tex.).

Parent-unemancipated child immunity in personal injury actions was first established in West Virginia in *Securo v. Securo,* 110 W.Va. 1, 156 S.E. 750 (1931), when a sixteen year old unemancipated daughter was prohibited from maintaining an action against her father for injuries received in an automobile accident allegedly caused by his simple negligence. The language in the *Securo* case has been repeated time and time again in subsequent West Virginia cases and sets out essentially the reasoning behind this Court's interpretation of the public policy in this area.

In *Poling v. Poling,* 116 W.Va. 187, 179 S.E. 604 (1935), this Court held that the same reasoning should apply to actions between husband and wife, saying in addition: "To allow actions for damages between spouses for alleged personal injury would involve the placing of an additional strain on the marriage relation. The state is vitally concerned in maintaining that relationship and not in facilitating its disruption by authorizing personal injury actions between them—'another step to destroy the sacred

relation of man and wife, and to open the door to lawsuits between them for every real and fancied wrong' ". *Poling v. Poling, supra* at 193, 179 S.E. at 607.

The public policy question involved in these certified questions has been treated by this Court as applying equally in personal injury actions between parents and unemancipated children and actions between spouses. *Adams v. Grogg,* 153 W.Va. 55, 166 S.E.2d 755 (1969); *Freeland v. Freeland,* 152 W.Va. 332, 162 S.E.2d 922 (1968); *Groves v. Groves,* 152 W.Va. 1, 158 S.E.2d 710 (1968); *Campbell v. Campbell,* 145 W.Va. 245, 114 S.E.2d 406 (1960); *Wright v. Davis,* 132 W.Va. 722, 53 S.E.2d 335 (1949); *Staats v. Co-Operative Transit Company,* 125 W.Va. 473, 24 S.E.2d 916 (1943); *Lusk v. Lusk,* 113 W.Va. 17, 166 S.E. 538 (1932). All of these decisions, including the ones decided in 1968 and 1969, have reiterated the public policy first announced in *Securo v. Securo, supra.*

Limiting personal injury suits between parent-child and husband-wife, like most public policy, divides reasoned minds on either side of the question. There is sound reasoning in the decisions of the courts of other jurisdictions taking contradictory positions. There are some in the West Virginia legal community, including this writer, who are of the opinion that the family immunity doctrine both as it relates to unemancipated children and parents and intraspousal immunity should be overruled.

However, many, and perhaps most others, including the majority of the members of this Court, with sound reasoning, think otherwise. The public policy of West Virginia, therefore, is still expressed in *Securo v. Securo, supra* at 2, 156 S.E. at 751:

> "The basis of this rule . . . lies in the very vital interest which society has in preserving harmony in domestic relations, and in not permitting families to be torn asunder by suits for damages by petulent, insolent or ungrateful children against their parents for real or fancied grievances. It is deemed better that an occasional wrong should go unrequited than that family life

should be subjected to the disrupting effects of such suits. This reasoning is certainly sound in so far as it applies to supposed causes of action resting merely on carelessness or failure to exercise due diligence . . . ."

It is still the public policy of this State that a parent cannot maintain an action for personal injury against a child, therefore no action may be brought in this case on behalf of the father as beneficiary.

There remains the question of whether Eugene F. Chase as personal representative can maintain an action against his son for the benefit of the siblings — the adult and infant brothers and sisters of the defendant son. We hold that he can.

If this were a West Virginia wrongful death action, there would be no right of action in the individual children of the deceased. The action would be brought by the personal representative and the recovery, if any, divided to the appropriate beneficiaries of the estate. Code, 1931, 55-7-5; Code, 1931, 55-7-6, as amended. Personal representatives of a deceased parent in a wrongful death action in West Virginia cannot sue or be sued by an unemancipated child of the deceased any more than if the deceased had lived and attempted to bring the action. *Adams v. Grogg, supra.* In Pennsylvania, it is otherwise, and the direct beneficiaries are the relatives named in the statute, including the children. *Greene v. Basti,* 391 F.2d 892, 894 (3rd Cir.); *Pezzulli v. D'Ambrosia,* 344 Pa. 643, 26 A.2d 659.

The siblings, the children of Rosalie R. Chase, came back to West Virginia with a right already created in them by the laws of Pennsylvania to have maintained, or in certain eventualities to maintain themselves, a suit against their defendant brother for the negligent death of their mother — unless such suit is barred by the public policy of West Virginia.

This Court has indicated in two decisions that the public policy doctrines of these immunities should not

be extended purely as a matter of form to parties and to situations where they should not in logic and common sense apply, and where the public policy enunciated would not be promoted.

Thus, in *Freeland v. Freeland*, 152 W.Va. 332, 162 S.E.2d 922 (1968), a daughter-in-law brought an action against her father-in-law after she was injured in an automobile belonging to her father-in-law and negligently driven by her minor husband before they were married. At the time of the accident, her husband was an unemancipated child living at home. This Court held that public policy did not bar the implementation of the family purpose doctrine.

In *Lusk v. Lusk, supra,* this Court upheld an action by a sixteen year old unemancipated daughter against her father for an injury received as a result of his negligence in operating a bus. He drove the bus under a contract with a county board of education. The Court reasoned that the father in negligently operating the bus not only was engaged in a business capacity, but he was required by contract to carry liability insurance covering the operation of the bus. Family relations, this Court indicated, would not suffer from the maintenance of such an action. "There is no filial recrimination and no pitting of the daughter against the father in this case. No strained family relations will follow. On the contrary, the daughter must honor the father for attempting to provide compensation against her misfortune. Family harmony is assured instead of disrupted. A wrong is righted instead of 'privileged'." *Lusk v. Lusk, supra* at 19, 166 S.E. at 539.

The point has not before been decided in this jurisdiction, but the law is practically universal that no public policy bars an action by one sibling against another. *Midkiff v. Midkiff,* 201 Va. 829, 113 S.E.2d 875. See PROSSER, TORTS, Chapter 122, page 866; Annot., 81 A.L.R.2d 1155, 1157-61.

The application of public policy is not a mechanical process. Where vital and valid reasoning for prohibiting

an action does not exist, the rules should not be strained simply to further a process of mental gymnastics. We do not feel a public policy in the State of West Virginia should bar an action by one sibling against another.

The Pennsylvania statutes, 12 P.S. §§ 1601-1604, under which this action is authorized, creates a cause of action in Eugene F. Chase, Stephen E. Chase, Trujean Chase, Mary Jo Bates, Rebecca Pitrolo, Kathleen McCarty, Nancy Long, Glenna Chicas and Elizabeth Fawcett. One of them, Stephen E. Chase, is the defendant himself, another Eugene F. Chase, is the father of the defendant, the remaining individuals who are given a right of action for the mother's death, are siblings, adult and infant brothers and sisters of the defendant Stephen E. Chase. The right to maintain the action by all of them is a new cause of action created by the Commonwealth of Pennsylvania by the above statutory enactments. The creation of these rights was completed prior to the time these parties came to the State of West Virginia asserting their cause of action. Therefore, when the executor, Eugene F. Chase, filed this action in the Circuit Court of Marion County, he filed it for the benefit of the real parties in interest as created by the Pennsylvania statutes.

It is our opinion that there is no public policy in West Virginia barring actions of one adult or infant sibling against another. The plaintiff, therefore, as personal representative can maintain an action in Marion County against his son for the benefit of all his children, except the defendant son who obviously cannot share in the recovery. As stated, the father cannot recover damages for himself.

Neither can he recover funeral expenses that he has expended.

Counsel for the plaintiff contends that although general damages in intrafamilial tort actions may be barred by public policy considerations, funeral and other similar expenses should be permitted, citing *Adams v. Grogg, supra.* This was not the intent of that part of the *Adams*

decision. Funeral and other expenses are merely elements of the recoverable damages in a wrongful death action, and are to be treated in the same manner as other damages in wrongful death actions involving parent and child, or husband and wife. Code, 1931, 55-7-6, as amended.

Pennsylvania law limits recovery for funeral expenses to a beneficiary who has paid or is primarily liable for such expenses. The plaintiff, Eugene F. Chase, having incurred the funeral expenses is the only beneficiary permitted possible recovery under this Pennsylvania law.

Since the plaintiff is the father of the defendant, Stephen E. Chase, however, recovery of funeral expenses in the instant case is barred by the public policy of this State which prohibits actions between parent and child.

This is true even though the father may have paid the funeral expenses in his capacity as executor of the estate rather than as an individual. These expenses could only have been recovered, if the mother could have recovered similar expenses against her son had she lived.

*Adams v. Grogg, supra,* involved immunity between husband and wife, but from our previous discussion, it is obvious it applies with equal force to parent-child immunity. In the *Adams* case, the deceased wife was killed in an automobile accident as the result of her husband's alleged negligence. She left surviving a minor child not related to her surviving husband. The administratrix of her estate brought an action under Code, 1931, 55-7-5, for wrongful death.

The trial court in *Adams v. Grogg, supra,* certified the following question:

> "Can the personal representative of a deceased wife maintain an action, under Code 55-7-5, against her surviving husband for damages arising out of the death of the wife, resulting from a wrongful act on the part of the husband, where there is a beneficiary of the deceased wife who is not related to the defendant husband."

We answered the question in the negative, saying among other things (153 W.Va. at 58, 166 S.E.2d at 757):

". . . That statute provides that an action may be maintained against the wrongdoer, if, and only if, the injured party, had he lived, would have been entitled to maintain such action. Applying Code, 1931, 55-7-5 to the instant case and considering the above cited decisions of this Court which preclude one spouse from suing another, it becomes evident that this action cannot be maintained."

For reasons stated in this opinion, we are impelled to answer the first certified question in the affirmative as it relates to the infant and adult sisters, but in the negative as it relates to the father and the defendant. The second certified question is answered in the negative. The rulings of the Circuit Court of Marion County are reversed in part and affirmed in part.

*Rulings on certified questions reversed in part and affirmed in part.*

NEELY, JUDGE, concurring:

I concur in the majority opinion as it relates to the certified questions presented, and I further concur in the reaffirmation of the family immunity doctrine when the real party in interest is a parent or child. However, it appeared on oral argument that the real party in interest in this case is not the named defendant, but rather a liability insurance carrier. Consequently, I would have requested that supplemental briefs be submitted and the case be re-argued on the specific question of whether the family immunity doctrine should be abrogated when the real party defendant in interest is an insurance carrier.

A holding that the family immunity defense is inappropriate when there is liability insurance would be consistent with our opinion in *Lusk v. Lusk,* 113 W.Va. 17, 166 S.E. 538 (1932).

The reasons advanced for continuation of the family immunity doctrine when the real defendant is a parent

or child are persuasive. Society has an interest in preserving harmony in domestic relations, and avoiding suits for damages by petulant, insolent or ungrateful children which would cause families to be torn asunder. *Securo v. Securo,* 110 W.Va. 1, 156 S.E. 750 (1931).

Suit by one minor child against his parents would allow the child to gain an advantage over his brothers and sisters at the expense of the common fund, which has been dedicated to the fair and equal support of all of them. See *Small v. Morrison,* 185 N.C. 577, 118 S.E. 12 (1923).

Many states have eliminated the family immunity doctrine where there is an insurance carrier. In *Dunlap v. Dunlap,* 84 N.H. 352, 150 A. 905 (1930), a case decided before complete abrogation of the immunity doctrine in New Hampshire in *Briere v. Briere,* 107 N.H. 432, 224 A.2d 588 (1966), the New Hampshire court held under the facts of the case, that the existence of liability insurance precluded a successful plea of family immunity. Although the New Hampshire court recognized that the existence of insurance did not create liability where none existed otherwise, the court said that the presence of insurance removed the disability which ordinarily would have barred the suit, as the suit was, in effect, between the son and the insurance company.

I recognize, as the court did in *Barlow v. Iblings,* 156 N.W.2d 105 (1968-Iowa) that the availability of a cause of action and the presence of liability insurance may lead to fraud, or to collusive or friendly suits. One member of the same family may encourage members of his family to bring an action against him, and then suppress defenses to the detriment of an insurance carrier.

However, that problem appears to be handled adequately in cases like *Hebel v. Hebel,* 435 P.2d 8 (1967-Alaska), which recognized the possibility of fraud and collusion between the parent and the child, and suggested guarding against such a danger by added caution on the part of the court and the jury in examining and assessing

the facts. See also *Streenz v. Streenz,* 106 Ariz. 86, 471 P.2d 282 (1970). *France v. A.P.A. Transport Corp.,* 56 N.J. 500, 267 A.2d 490 (1970); *Signs v. Signs,* 156 Ohio 566, 103 N.E.2d 743 (1952); *Borst v. Borst,* 41 Wash. 2d 642, 251 P.2d 149 (1952).

In West Virginia a solution of this type would require an exception to the rule forbidding discussion of insurance coverage before a jury.

The prevalence of liability insurance has dramatically changed the economic life of this State. This Court has been reluctant to recognize a fact which juries have long recognized, that insurance coverage changes the nature of a law suit. An insurance contract should no longer be considered exclusively as a contract of indemnity. A right-thinking man, recognizing that all of us are more or less negligent with respect to others on numerous occasions, should purchase insurance not only to protect his own estate, but also to spread the risk of injury.

At one time the law of this State appeared to be moving toward a recognition that liability insurance is more than just a contract of indemnity and establishes rights in third parties. In the case of *Lusk v. Lusk, supra,* this Court ruled that a daughter, who was a passenger on a school bus, could sue her father, the school bus driver, when there was a liability insurance policy. This case accurately states what I consider the correct rule of law.

The movement of the law in other jurisdictions as well as West Virginia is toward a reevaluation of the law of insurance. Family immunity is merely one area which is ripe for reevaluation. There are many areas of abuse under our current law of insurance, the most notable of which is the difficulty of achieving a fair settlement in a small case which does not warrant the expense of a jury trial. This Court and the bar should be developing law which will encourage conflict to be resolved short of litigation. Our current law provides so many incentives

to litigation that it perpetuates conflict rather than encouraging its resolution equitably and expeditiously.

The public conscience should be shocked by the practices of many of the larger and better known insurance companies, who litigate every frivolous technical defense through both the lower and appellate courts in the hope of starving just claimants into an inequitable settlement. Their practices may be considered by some as just retribution for equally frivolous plaintiffs' law suits, but courts should resist the temptation to build a system of jurisprudence upon the principle of countervailing injustices.

There are attempts being made in federal courts to curtail these abuses which I feel should be imitated and expanded in the State courts of West Virginia. For example, in *Maryland Casualty Co. v. Memorial General Hospital* (4th Cir. 1972), decided on December 13, 1972 (unpublished opinion), the circuit court awarded counsel fees to the plaintiff in an action against a surety on a construction bond. There, the court said,

> "* * * Save in unusual circumstances, no such recovery is generally permissible, and then traditionally only in equity. *Sprague v. Ticonic Bank,* 307 U.S. 161, 167 (1939). But this doctrine has been relaxed when the allowance is 'essential to the doing of justice.' *Rolax v. Atlantic Coast Line R. Co.* 186 F 2d 473, 481 (4th Cir. 1951). There is reputable authority, furthermore, for the recovery of attorney's fees in any kind of suit 'where an unfounded action or defense is brought or maintained in bad faith, vexatiously, wantonly, or for oppressive reasons.' 6 Moore's Federal Practice § 54.77[2]; *Stacy v. Williams,* 50 FRD 52 (N.D. Miss. 1970). . . ."

However, the only way in which this Court can begin to make strides in the general direction of modernizing the law of insurance in this State is to have the questions exhaustively and competently briefed in this Court.