Wagas JILANI, Ammad Jilani and Saher Jilani, Minors By and Through Their Next Friend, Khawar JILANI, Petitioners,

v.

Ahmad F. JILANI, Respondent.

No. C-7481.

Supreme Court of Texas.

Dec. 14, 1988.

Rehearing Denied May 10, 1989.

Patrick C. Simek, Lubbock, for petitioners.

Thomas J. Purdom, Lubbock, for respondent.

SPEARS, Justice.

This personal injury suit was filed by Khawar Jilani as next friend of her minor children, Wagas Jilani, Ammad Jilani and Saher Jilani, against the children's father, Ahmad Jilani, for damages arising out of an automobile collision. The issue presented is whether unemancipated minor children may recover damages against their parent caused by the negligence of that parent in operating a motor vehicle.

In June of 1985, Ahmad Jilani was driving his wife and three children to visit friends in Arkansas when his automobile swerved off the highway and collided with a utility pole. Mrs. Jilani and her three children were injured. Mrs. Jilani brought the present action on behalf of her three unemancipated minor children for personal injuries sustained by the children. Mrs. Jilani alleged that the children's injuries were proximately caused by the negligence of their father in failing to keep a proper lookout and in driving at an excessive rate of speed.

The trial court granted summary judgment for the defendant, father of the three children, based on the parental immunity doctrine. The court of appeals affirmed that judgment. 747 S.W.2d 504. We reverse the judgment of the court of appeals and remand the cause to the trial court for a trial on the merits.

The doctrine of parental immunity in its most basic and primitive form acts as a barrier to children who attempt to recover damages for injuries sustained as a result of their parent's tortious actions. The doctrine was judicially created in 1891 in *Hewlett v. George*, 68 Miss. 703, 9 So. 885 (1891). In *Hewlett*, the Supreme Court of Mississippi held that a minor child could not maintain an action against his parent for false imprisonment. Without citation of authority, the court reasoned that sound public policy designed to promote harmony and peace within the family unit forbids a

minor child from asserting a claim for personal injuries against a parent. That court reasoned "so long as the parent is under obligation to care for, guide, and control, and the child is under reciprocal obligation to aid and comfort and obey, no such action as this can be maintained." 68 Miss. at 711, 9 So. at 887.

Although the majority of American courts adopted the *Hewlett* doctrine, numerous exceptions and limitations have been created since its inception. A number of courts have held that the parental immunity doctrine does not prevent an action by a child against a representative of a deceased parent. *See, e.g., Brennecke v. Kilpatrick*, 336 S.W.2d 68 (Mo.1960); *Palcsey v. Tepper*, 71 N.J.Super. 294, 176 A.2d 818 (1962); *Davis v. Smith*, 126 F.Supp. 497 (E.D.Pa.1954). In *Davis* the court reasoned that the risk of disturbing the parent-child harmony is extinguished upon the parent's death. 126 F.Supp. at 507. Another exception to the doctrine recognized by some courts arises when the parent's actions constitute an intentional tort. *Emery v. Emery*, 45 Cal.2d 421, 289 P.2d 218 (1955); *Nudd v. Matsoukas*, 7 Ill.2d 608, 131 N.E.2d 525 (1956); *Mahnke v. Moore*, 197 Md. 61, 77 A.2d 923 (1951); *Cowgill v. Boock*, 189 Or. 282, 218 P.2d 445 (1950). Moreover, we are unable to find where any court has ever applied the doctrine of parental immunity to suits between a child and parent concerning property and contractual rights.

In *Felderhoff v. Felderhoff*, 473 S.W.2d 928 (Tex.1971), this court carved out its own exception to the doctrine and set the overall parameters in Texas determining when a parent would remain immune from liability to his child for alleged acts of ordinary negligence. In *Felderhoff*, a 14–year–old unemancipated minor was injured while working for a farming partnership in which his father was a partner. The injury was alleged to have been caused by the negligent acts of his father in the course and furtherance of the partnership business. In a well-reasoned opinion, this court observed there was a legal relationship of employer and employee created between the defendant partnership and the plaintiff under which the same legal duties were owed to plaintiff as to any other employee. The court held that because the negligent acts were alleged to have been committed in the course of partnership business rather than in the discharge of parental authority or duties, the plaintiff should not be prevented from pursuing his action against the farming partnership. *Id.* at 932–33.

Although this court in *Felderhoff* declined to abolish the doctrine of parental immunity entirely, it did adopt a test which set the boundaries for parent-child litigation. The court retained the immunity rule with respect to "alleged acts of ordinary negligence which involve a reasonable exercise of parental authority or the exercise of ordinary parental discretion with respect to provisions for the care and necessities of the child." 473 S.W.2d at 933. The court reasoned that these parental duties which include the provision of a home, food, schooling, family chores, medical care and recreation, could be "seriously impaired" if parents could be held liable for their ordinary negligence occurring while in the discharge of parental duties.

This court further stated,

[T]he most we can do is to prevent the judicial system from being used to disrupt the wide sphere of *reasonable discretion* which is necessary in order for parents to properly exercise their responsibility to provide nurture, care, and discipline for their children. (emphasis added).

*Id.* at 933.

We continue to adhere to the principles and policy expounded in *Felderhoff*. The question we now decide is whether the facts of this case fall within the scope of "reasonable exercise of parental authority or the exercise of ordinary parental discretion with respect to provisions for the care and necessities of the child."

Although this court has never had the opportunity to interpret the scope of the *Felderhoff* exceptions, other courts have defined them in a way that is helpful. An exercise of *parental authority* involves acts such as disciplining and supervising a

child. *Wright v. Wright*, 134 Mich.App. 800, 351 N.W.2d 868 (1984). The *exercise of discretion* in providing for the care and necessities of a child, on the other hand, is limited to that which a parent is obligated to furnish. *See Horn v. Horn*, 630 S.W.2d 70 (Ky.1982).

Under these definitions, we do not hesitate in holding that the facts here do not fall within the sphere of "reasonable exercise of parental authority or the exercise of ordinary parental discretion" described in *Felderhoff*. The familial obligations and duties imposed by law and nature are quite different from the general obligation the law imposes upon every driver of an automobile. It is the "reasonable discretion" with respect to parental obligations that this court was trying to protect in *Felderhoff*. The immunity is limited to transactions that are essentially parental. In the present action, the essence of the alleged negligence was the improper operation of a motor vehicle—an activity not *essentially* parental. In *Schneider v. Coe*, 405 A.2d 682 (Del.1979), the Supreme Court of Delaware reasoned:

> Unlike driving an automobile, supervision of one's children involves issues of parental control, authority, and discretion that are uniquely matters of a very personal type of judgment. The freedom to exercise such judgment has constitutional underpinning and contrasts sharply with the state's supervision and regulation of the judgment one must exercise

while driving an automobile. (citations omitted).

405 A.2d at 684.

We are aware that the accident here occurred while the Jilani family was on vacation and that the language in *Felderhoff* suggests that recreation was one of the several parental duties which should ordinarily be beyond the judicial sphere. However, this factor does not change our result. Regardless of the purpose of the automobile excursion, this case does not involve the "reasonable exercise of parental authority or the exercise of parental discretion" as envisioned in *Felderhoff*.

Our holding today is limited to the facts before us: an automobile tort action brought by an unemancipated minor child against a parent.[1] We believe that allowing such an action will not threaten "parental authority or discipline" nor will it risk substituting judicial discretion for parental discretion in the care and rearing of minor children. We therefore reverse the judgment of the court of appeals upholding the trial court's summary judgment and remand this cause to the trial court for trial.

MAUZY, J., files a concurring opinion in which ROBERTSON, J., joins.

GONZALEZ and COOK, JJ., file dissenting opinions.

MAUZY, Justice, concurring.

I concur in the court's decision to allow an unemancipated minor child to pursue a

---

1. We note that at least thirty other states would allow a suit by an unemancipated child against a parent for automobile negligence. *See Hebel v. Hebel*, 435 P.2d 8 (Alaska 1967); *Sandoval v. Sandoval*, 128 Ariz. 11, 623 P.2d 800 (1981); *Gibson v. Gibson*, 3 Cal.3d 914, 479 P.2d 648, 92 Cal.Rptr. 288 (1971); *Schneider v. Coe*, 405 A.2d 682 (Del.1979); *Ard v. Ard*, 414 So.2d 1066 (Fla. 1982); *Farmers Ins. Group v. Reed*, 109 Idaho 849, 712 P.2d 550 (1985); *Turner v. Turner*, 304 N.W.2d 786 (Iowa 1981); *Nocktonick v. Nocktonick*, 227 Kan. 758, 611 P.2d 135 (1980); *Rigdon v. Rigdon*, 465 S.W.2d 921 (Ky.1971); *Black v. Solmitz*, 409 A.2d 634 (Me.1979); *Stamboulis v. Stamboulis*, 401 Mass. 762, 519 N.E.2d 1299 (1988); *Sweeney v. Sweeney*, 402 Mich. 234, 262 N.W.2d 625 (1978); *Anderson v. Stream*, 295 N.W.2d 595 (Minn.1980); *Transamerica Ins. Co. v. Royle*, 202 Mont. 173, 656 P.2d 820 (1983);

*Briere v. Briere*, 107 N.H. 432, 224 A.2d 588 (1966); *Foldi v. Jeffries*, 93 N.J. 533, 461 A.2d 1145 (1983); *Guess v. Gulf Ins. Co.*, 96 N.M. 27, 627 P.2d 869 (1981); *Holodook v. Spencer*, 36 N.Y.2d 35, 324 N.E.2d 338, 364 N.Y.S.2d 859 (1974); *Nuelle v. Wells*, 154 N.W.2d 364 (N.D. 1967); *Kirchner v. Crystal*, 15 Ohio St.3d 326, 474 N.E.2d 275 (1984); *Unah By and Through Unah v. Martin*, 676 P.2d 1366 (Okla.1984); *Winn v. Gilroy*, 296 Or. 718, 681 P.2d 776 (1984); *Falco v. Pados*, 444 Pa. 372, 282 A.2d 351 (1971); *Silva v. Silva*, 446 A.2d 1013 (R.I.1982); *Elam v. Elam*, 275 S.C. 132, 268 S.E.2d 109 (1980); *Wright v. Wright*, 213 Va. 177, 191 S.E.2d 223 (1972); *Merrick v. Sutterlin*, 93 Wash.2d 411, 610 P.2d 891 (1980); *Lee v. Comer*, 159 W.Va. 585, 224 S.E.2d 721, 723 (1976); Conn.Gen.Stat. § 52–572c (1985); N.C.Gen.Stat. § 1–539.21 (1983 Repl.Vol., 1985 Cum.Supp.).

cause of action against his or her parent for the negligence of a parent in operating a motor vehicle. The doctrine of parental immunity should only be retained with respect to acts which involve a reasonable exercise of parental authority or the exercise of parental discretion in providing for the care and necessities of a child. In all other cases this judicially created doctrine should be abandoned.

In reviewing various decisions upholding the doctrine of parental immunity, I find four basic premises upon which the doctrine is based: First, the doctrine allegedly preserves the domestic peace, harmony and tranquility of the family unit; second, the doctrine allegedly prevents the possibility of fraud and collusion; third, the doctrine allegedly prevents the potential depletion of the family funds; and fourth, the doctrine allegedly inhibits interference with parental discipline and control.

In regard to the first rationale, it is hard to perceive how suits based in tort will destroy the harmony and tranquility of the family unit while property and contract actions do not. A disruption to the family peace is far more likely to occur as a result of the tortious conduct itself, rather than as a result of allowing a redress of the wrongful action which led to the injury.

When this court abrogated the doctrine of interspousal immunity in *Price v. Price*, 732 S.W.2d 316 (Tex.1987), we noted, "it is difficult to fathom how denying a forum for the redress of any wrong could be said to encourage domestic tranquility." *Id.* at 318. Other courts have analyzed the family harmony rationale, and similarly rejected it as unmeritorious. *See e.g., Briere v. Briere*, 107 N.H. 432, 224 A.2d 588 (1966); *Gelbman v. Gelbman*, 23 N.Y.2d 434, 297 N.Y.S.2d 529, 245 N.E.2d 192 (1969); *Falco v. Pados*, 444 Pa. 372, 282 A.2d 351 (1971); *Plumley v. Klein*, 388 Mich. 1, 199 N.W.2d 169 (1972); *Rupert v. Stienne*, 90 Nev. 397, 528 P.2d 1013 (1974); *Elam v. Elam*, 275 S.C. 132, 268 S.E.2d 109 (1980). *See also, Dorsey v. State Farm Mut. Auto. Ins. Co.*, 9 Ohio St.3d 27, 30, 457 N.E.2d 1169 (1984).

Furthermore, if a defendant has purchased liability insurance and a child sues to collect such insurance, there is little possibility of any disruption of family harmony if the child is allowed recovery. This is especially true when the suit arises out of an automobile accident. In such cases, the nominal defendant parent usually will suffer no loss because insurance coverage is mandated by statutory law in Texas. As the Supreme Judicial Court of Massachusetts noted:

> When insurance is involved, the action between parent and child is not truly adversary; both parties seek recovery from the insurance carrier to create a fund for the child's medical care and support without depleting the family's other assets. Far from being a potential source of disharmony, the action is more likely to preserve the family unit in pursuit of a common goal—the easing of family financial difficulties stemming from the child's injuries.

*Sorensen v. Sorensen*, 369 Mass. 350, 362, 339 N.E.2d 907, 914 (1975). Although I adhere to the principle that the mere existence of insurance should not create a cause of action where none otherwise exists,[1] it is appropriate and relevant to consider liability insurance as one factor because of its prevalent nature.

The second justification for prohibiting parent-child suits, the possibility of collusive lawsuits, was rejected by this court when it abolished interspousal immunity in *Price v. Price*, 732 S.W.2d 316 (Tex.1987). In *Price*, we noted that our system of justice is capable of ascertaining the existence of fraud and collusion and therefore concluded that the mere possibility of a fraudulent claim should not be the basis for denying recovery. Similarly, in *Kirchner v. Crystal*, 15 Ohio St.3d 326, 474 N.E.2d 275 (1984), the court held:

> The deterrent effect of a perjury charge, extensive and detailed pretrial discovery procedures, the opportunity for cross-examination and the avoidability of summary judgment motions are but a few examples of the tools available to our judicial

---

**1.** *See, e.g., Goller v. White*, 20 Wis.2d 402, 122 N.W.2d 193, 197 (1963).

system in exposing fraudulent claims in any type of lawsuit.

There is no justifiable reason why we should not continue to adhere to the principle that our legal system is equipped to reduce the possibility of fraud.

In analyzing the applicability of the "depletion of family funds" argument, it is interesting to note that this rationale is never applied for the purpose of protecting the wrongdoer's children against claims of strangers injured by the parents' negligent conduct. In *Sneed v. Sneed,* 705 S.W.2d 392 (Tex.App.—San Antonio 1986, writ ref'd n.r.e.), the court allowed a suit on behalf of a child against his deceased parents' estate, and held, "it is hard to understand why a child may not be compensated for an injury by his parent while a stranger will be allowed to deplete the 'family fund' to the detriment of the tortfeasor's children." *Id.* at 397.

Under current Texas law, a parent whose negligent operation of an automobile causes personal injury can be sued by his spouse, nephews and nieces, aunts and uncles and all relatives, but not his children. If our legislative and judicial branches have determined that personal injury actions by other relatives will not place an impermissible strain on the family fund, a suit by an unemancipated child will likewise not overly burden the family financial resources.

Under Texas law, drivers and owners of automobiles are required to purchase liability insurance.[2] Assuming the owner of a car complies with this mandate, there will be little or no depletion or exhaustion of family funds if the insurance coverage is adequate.

In reviewing the fourth rationale for parental immunity, that it inhibits interference with parental discipline and control, the rule developed in *Felderhoff v. Felderhoff,* 473 S.W.2d 928 (Tex.1971) gives adequate protection from any such interference. In *Felderhoff,* this court retained the immunity rule with respect to acts of ordinary negligence which involve a reasonable exercise of parental authority or ordinary parental discretion with respect to

provision for the care and necessities of the child. An automobile negligence case does not involve a reasonable exercise of parental authority or the exercise of parental discretion. *See Rigdon v. Rigdon,* 465 S.W.2d 921 (Ky.1971); *Schneider v. Coe,* 405 A.2d 682 (Dela.1979); *Turner v. Turner,* 304 N.W.2d 786 (Iowa 1981).

After reviewing the policy reasons supporting the doctrine of parental immunity, I am convinced that they do not justify denying plaintiff the right to pursue a cause of action in this case. Had there been passengers in the car other than children of the parent driver, those passengers could bring suit against the driver for personal injuries. To allow a recovery here to all relatives, friends or acquaintances, but not to the driver's own children, would be a denial of the children's right to legal redress.

Although the doctrine of parental immunity was originally designed to protect parents, in the vast majority of these cases, the only party to benefit from the doctrine is the parents' liability insurance carrier. If given the choice, what parent would elect to insure every person in the world against his negligence except his own children? Parents in this state would be outraged if they knew that the doctrine, when applied, is now used to bar their children's claims against the parents' liability insurance carrier.

The doctrine of parental immunity should be retained with respect to acts which involve a reasonable exercise of parental authority or the exercise of parental discretion in providing for the care and necessities of a child. However, the doctrine was not intended to be used, and should never be used, to shield a liability insurance carrier from the just claims of a minor child.

The best solution to the question presented in this and similar cases is the enactment of a direct action statute. *See Continental Gas Co. v. Huizar,* 740 S.W.2d 429, 432 (Tex.1987) (Kilgarlin, J., concurring). Such a statute would allow injured persons to pursue a cause of action against a tort-

**2.** Tex.Rev.Civ.Stat.Ann. art. 6701h, § 1A (Vernon Supp.1988).

feasor's liability insurance company. If Texas had a direct action statute, the Jilani children would be suing their father's liability insurance company, not their father.

When insurance is required by a statute or ordinance, the protection of the insured is not the primary objective of the insurance. Even in the absence of specific language securing to injured persons direct rights under the policy, there is inherent in such a policy an inference of a compulsory undertaking on the part of the insurer to answer in damages to an injured person. "[T]he compulsory insurance requirement of the Texas Motor Vehicle Safety law implies that all potential claimants resulting from automobile accidents are intended as beneficiaries of the statutorily required automobile liability coverage." *Dairyland County Mutual Ins. Co. of Texas v. Childress*, 650 S.W.2d 770, 775 (Tex.1983).

The legislature has bestowed on the Insurance Commission the power of approval of "No Action" clauses in standard insurance policies. Those clauses contractually prohibit insurance companies from being named as parties in suits against their insureds.

It is inconsistent with public policy to sanction a situation in which the ultimate beneficiary of policy proceeds is deprived by a provision in the policy of an open, speedy and realistic opportunity to pursue his right to an adequate remedy at law jointly against the insured and the insurer. The result obtained by such policy restrictions is especially incongruous when the insurer participates in the controversy, not as a joint defendant in the proceeding brought by the injured plaintiff against the insured, but, rather, as the "undisclosed guardian" of the interest and rights of the insured. Under the present system, the injured plaintiff is precluded from having the trial court directly consider in one action all facets of the defendant's joint and several liability, not only as to the plaintiff's claim against the insured, but also as to any defenses the insurer has against the insured which might operate to destroy the plaintiff's claim.

Joinder of the insurer would avoid the potential dangers inherent in the above described situation. Rules of joinder are adopted with the purpose of avoiding multiplicity of suits, and there is no reason why insurance companies should be exempt from the law in this respect. If joinder were allowed initially, all inter-related claims and defenses could be heard and adjudicated reciprocally among all parties, all the cards would be on the table, and the plaintiff would have the same initial rights against insurer as insurer now has against plaintiff. In this manner, the interest of all parties in expeditiously litigating the claim would be furthered.

The argument that a jury is more apt to return a verdict for the injured party, and for a larger amount, if they know the loss is ultimately to fall on an insurance company is untenable. Jurors know all motor vehicle owners in this state are required to carry liability insurance. Those who drive a vehicle are reminded of this fact each time they pay their insurance premiums.

Considering the public policy of avoiding a multiplicity of suits and of eliminating unreasonable impediments in the adjudicative process, I can find no justifiable reason why an insured and insurer should be allowed to employ a "no action" clause to contract away or postpone the legal remedy of a third party, or to impose unusual limitations on a third party's right to sue adverse parties jointly. *See Shingleton v. Bussey*, 223 So.2d 713 (Fla.1969).

ROBERTSON, J., joins in this concurring opinion.

COOK, Justice, dissenting.

By holding that unemancipated minor children may pursue a cause of action against their parents for negligent operation of motor vehicles, the court has removed one more thread from our already degenerating social weave. Reverence for one's parents is one of the most basic tenets of our society.[1] Yet the court today

1. *E.g., Exodus* 20:12 ("Honour thy father and thy mother: that thy days may be long upon the land which the Lord thy God giveth thee.").

approves of litigation that pits children against their parents.

The court has read *Felderhoff v. Felderhoff,* 473 S.W.2d 928 (Tex.1971), too broadly. The majority construes that case to abrogate the doctrine of parental immunity except in areas of parental authority and parental discretion. The issue in *Felderhoff* was "whether parental immunity should be extended to acts arising outside of the normal family relationship of parent and child *and* occurring in the parent's business activity in which the child is engaged as an employee." 473 S.W.2d at 930 (emphasis added). The majority's reading of *Felderhoff* would make the entire second phrase superfluous. The majority of courts construing *Felderhoff* have likewise concluded that the holding was not this broad.[2]

In fact, this broad interpretation of *Felderhoff* conflicts with a previous interpretation by this court. In *Sax v. Votteler,* 648 S.W.2d 661 (Tex.1983), this court, relying on *Felderhoff,* reasoned that the doctrine of parent-child immunity would preclude children from suing their parents when the parents negligently fail to assert a cause of action on behalf of the children. *Id.* at 667.

Further, assuming arguendo that the court has correctly interpreted the scope of *Felderhoff's* abrogation of the immunity, the court has misapplied the test established. *Felderhoff* specifically enumerated "the provision of a home, food, schooling, family chores, medical care, and recreation" as within the scope of parental discretion. *Id.* at 933. The Jilanis were on a recreational trip when the accident occurred. The decision in this case overrules the test established in *Felderhoff.*

Further, the court does not discuss the fact that allowing this litigation will disrupt the harmony and tranquillity of the family unit. The relationship between a parent and child is unique. It involves elements of love, trust, confidence, and independence that must be exercised continuously by parents in carrying out their demanding and burdensome duties. Parents are the primary role models for children. Children learn from what they see their parents do; a holding such as this can only encourage and breed a more litigious society.

The need to preserve this relationship remains even stronger in today's troubled society. At a time when the deterioration of the family unit is a matter of concern and alarm, the court should preserve—and not further destroy—what is left of this basic unit of our nation's strength.[3] A number of other states still bar a cause of action such as the one in this case. *Ward v. Rhodes, Hammonds & Beck, Inc.,* 511 So.2d 159, 163 (Ala.1987); *Carpenter v. Bishop,* 290 Ark. 424, 426, 720 S.W.2d 299, 300 (1986); *Horton v. Reaves,* 186 Colo. 149, 156, 526 P.2d 304, 308 (1974); *Brown v. Phillips,* 178 Ga.App. 316, 316–17, 342 S.E.2d 786, 787–88 (1986); *Buffalo v. Buffalo,* 441 N.E.2d 711, 712–14 (Ind.Ct.App. 1982); *Bondurant v. Bondurant,* 386 So. 2d 705, 706 (La.Ct.App.1980); *Frye v. Frye,* 305 Md. 542, 567, 505 A.2d 826, 839 (1986); *McNeal v. Administrator of Estate of McNeal,* 254 So.2d 521, 523–24 (Miss.1971); *Pullen v. Novak,* 169 Neb. 211, 224, 99 N.W.2d 16, 25 (1959); *Barranco v. Jackson,* 690 S.W.2d 221, 222 (Tenn.1985). *See also Hogan v. Hogan,* 106 Ill.App.3d 104, 107, 61 Ill.Dec. 929, 931, 435 N.E.2d 770, 772 (1982) (operation of motor vehicle to accomplish a family purpose covered by

---

**2.** *See Attwood v. Estate of Attwood,* 276 Ark. 230, 235, 633 S.W.2d 366, 369 (1982); *Dzenutis v. Dzenutis,* 200 Conn. 290, 297, 512 A.2d 130, 134 (1986); *Ard v. Ard,* 414 So.2d 1066, 1067 & n. 3 (Fla.1982); *Nocktonick v. Nocktonick,* 227 Kan. 758, 771–72, 611 P.2d 135, 143–44 (1980); *Stamboulis v. Stamboulis,* 401 Mass. 762, 765, 519 N.E.2d 1299, 1301 n. 6 (1988); *Sorensen v. Sorensen,* 369 Mass. 350, 357 n. 8, 339 N.E.2d 907, 911 n. 8 (1975); *Hooper v. Clements Food Co.,* 694 P.2d 943, 944–45, 945 n. 2 (Okla.1985); *Winn v. Gilroy,* 61 Or.App. 243, 250 n. 2, 656

P.2d 386, 390 n. 2 (1983); *Barranco v. Jackson,* 690 S.W.2d 221, 227 (Tenn.1985); *Langley v. National Lead Co.,* 666 S.W.2d 343, 345 (Tex. App.—El Paso 1984, no writ); *Chase v. Greyhound Lines, Inc.,* 156 W.Va. 444, 453, 195 S.E. 2d 810, 815 (1973).

**3.** *See Turner v. Turner,* 304 N.W.2d 786, 789–90 (Iowa 1981) (LeGrand, J., dissenting). *Accord Rousey v. Rousey,* 528 A.2d 416, 421–24 (D.C. 1987) (Nebeker, J., dissenting).

parental immunity doctrine); *Kendall v. Sears, Roebuck & Co.*, 634 S.W.2d 176, 178 (Mo.1982) (parental immunity doctrine retained and applied on a case-by-case basis).

Several states have relied on the presence of liability insurance in abrogating the parental immunity doctrine with respect to motor vehicle accidents. *E.g., Williams v. Williams*, 369 A.2d 669, 672 (Del.1976); *Ard v. Ard*, 414 So.2d 1066, 1067–68 (Fla. 1982); *Sorensen v. Sorensen*, 369 Mass. 350, 362–63, 339 N.E.2d 907, 914 (1975). This reliance is misplaced. The reasoning that a "nominal defendant" parent will not usually suffer loss because of liability insurance is flawed. First, the minimum coverage required in Texas is only $20,000 for personal injury to a person in an accident. TEX.REV.CIV.STAT.ANN. art. 6701h, § 1(10) (Vernon Supp.1988). The "nominal defendant" parent would then be personally liable for any excess recovery. As a result, there remains a very real chance of depletion or exhaustion of family funds. Are children to thus conduct post judgment discovery on their parents and thereafter have the sheriff's department levy on the assets of the family?

Second, the State Board of Insurance has amended the Standard Provisions for Automobile Policies and added an endorsement to the Texas Automobile Manual that eliminates coverage if the claimant is the spouse or other family member of the insured. State Bd. of Insurance, 12 Tex.Reg. 1126 (1987). Texas personal automobile policies written after May 1, 1987 do not provide liability coverage to situations such as the one presented in the instant case.

In our society where many commitments are no longer taken with meaning, family values are eroding. Evidence of this is the divorce rate in our country, which is among the highest in the world. With this deci-

sion the court has further weakened a cherished cornerstone of our society.

GONZALEZ, Justice, dissenting.

We have not been presented with any compelling public policy reasons to change the doctrine of parental immunity. Therefore, I would not carve out the exception that the court has made in this case. Furthermore, the court's opinion has the potential of sowing the seeds of disharmony and conflict in the home and will disrupt the stability that this area of the law has enjoyed for the past 34 years. It is for these reasons that I dissent. I would affirm the judgment of the court of appeals.

This is a suit filed by a wife on behalf of her children, ages 15, 14 and 6, against her husband, the children's father, as a result of injuries the children received in an automobile accident which occurred while the father was taking them on a vacation.[1] The operative fact is not that the injury occurred in an automobile, but that the family was on vacation.

Under the common law of this State, parents are immune from liability for negligent injury to a child while they are performing their parental duties. *Aboussie v. Aboussie*, 270 S.W.2d 636, 639 (Tex.Civ. App.—Fort Worth 1954, writ ref'd), *Felderhoff v. Felderhoff*, 473 S.W.2d 928, 931 (Tex.1971), *Farley v. M M Cattle Co.*, 529 S.W.2d 751, 758 (Tex.1975).[2] One of the parental duties recognized in *Felderhoff* is providing for recreation. *Felderhoff*, 473 S.W.2d at 933. Since taking a family vacation is recreational in nature, this cause comes within the purview of the parental immunity doctrine.

In 1954, our court recognized the importance of the family and the dangers of suits by children for the negligent acts of their parents. In *Aboussie*, in an opinion

---

**1.** The State Board of Insurance has adopted a standard automobile policy endorsement which eliminates liability coverage if the claimant is the spouse or other family member of the insured. State Bd. of Ins., 12 Tex.Reg. 1126 (1987) (Texas Automobile Manual). However, the policy in this case did not contain such an exclusion.

**2.** There is a split of authority in other jurisdictions, but it appears that the majority of the states support the view that a parent is exempted from liability for negligent injuries to a child. Annotation, *Liability of Parent for Injury to Unemancipated Child Caused by Parent's Negligence —Modern Cases,* 6 A.L.R. 4th 1066 (1981).

which we adopted, the court of appeals stated:

There are God-given ties of love, loyalty and devotion between parents and children that do not exist between the children and other people. We do not think these ties should be cut asunder or endangered by permitting a minor unemancipated child to sue its parent for damages based on ordinary, unintentional negligence.

*Aboussie,* 270 S.W.2d at 640. This explains why a child should not be allowed to sue his or her parents, while other persons in the same vehicle are permitted to file a lawsuit against the driver.

In 1971, in *Felderhoff,* we stated:

We trust that it is not out of date for the state and its courts to be concerned with the welfare of the family as the most vital unit in our society. We recognize that peace, tranquility and discipline in the home are endowed and inspired by higher authority than statutory enactments and court decisions. Harmonious family relationships depend on filial and parental love and respect which can neither be created nor preserved by legislatures or courts. The most we can do is to prevent the judicial system from being used to disrupt the wide sphere of reasonable discretion which is necessary in order for parents to properly exercise their responsibility to provide nurture, care, and discipline for their children.

*Felderhoff* 473 S.W.2d at 933.

Parents have a duty to: (1) support their children, Tex.Fam.Code Ann. § 4.02 (Vernon Supp.1988); (2) provide medical care, Tex.Fam.Code Ann. § 12.04(3) (Vernon 1986); and manage the estate of their child, except where a guardian is appointed. Tex.Fam.Code Ann. § 12.04(4) (Vernon 1986).

Furthermore, the parents have the right to the earnings of the child. Tex.Fam.Code Ann. § 12.04(5) (Vernon 1986). Parents also have the power to represent the child in legal actions and make other decisions of a substantial legal nature concerning the

child, Tex.Fam.Code Ann. § 12.04(7) (Vernon 1986) and to hold or discharge any funds for the benefit of the child. Tex. Fam.Code Ann. § 12.04(8) (Vernon 1986).

Inevitably, there will be some instances where the alleged negligence of the parent will not arise out of the operation of an automobile and/or the parent may have no liability insurance or inadequate insurance. In such cases, there will exist an inherent conflict of interest. On the one hand, the parent will have the duty of supporting the child, while on the other hand, when sued by the minor, the parent is placed in an adversarial position in relation to the child. If the minor recovers a judgment against the parent, the parent would be charged with the responsibility of disbursing a sum of money to the child. However, the duty to manage the child's estate will in effect cause the money to return to the hands of the parent. If the court chooses to appoint a guardian to administer the funds awarded to the minor, this also will create a potential conflict between the parent, the minor, and the guardian, as to the expenditure of those funds. Whether the money judgment is paid by the parent or an insurance company, children may be more apt to argue with their parents, such as "it's *my* money and I can buy a motorcycle or a sports car with the money if I want to. If you don't let me, I am going to talk to *my* lawyer." There may even be an attorney who would initiate another lawsuit against the parents for their refusal to accede to the wishes of the minor. I therefore will not join an opinion that allows our judicial system to be used as a forum for a spectacle where family members are pitted against each other with "paid gladiators" fighting to win to the bitter end.

Even though the court's opinion is limited in scope and application, I am concerned about the consequences of carving out an exception in this case. History has taught us that once we start making exceptions to a doctrine, other exceptions are likely to follow. When this happens, the assault on the family will continue.[3] The common law

---

**3.** If there is an accident causing severe injuries    to a child, it is likely that a "runner" will de-

is not inflexible. It has capacity for growth and adaptation. However, we have not been presented with any compelling reasons to make the exception that the court has made.

For these reasons, I dissent..

scend on the child in the hospital like a vulture trying to hustle the child for a lawsuit against the parent. *See State Bar of Texas v. O'Quinn,* 763 S.W.2d 397, (Gonzalez, J. concurring).