# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-05-00358-CV

**Marietta Sepaugh, Individually, and as Next Friend of her minor son,
Frank LaGrone, Deceased, Appellant**

**v.**

**Paul LaGrone, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT
### NO. GN402204, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING

## O P I N I O N[1]

Marietta Sepaugh, individually and as next friend of her late minor son, Frank LaGrone (Frank), appeals a take-nothing summary judgment on damages claims she had asserted against appellee Paul LaGrone (LaGrone), Frank's father and Sepaugh's ex-husband. Sepaugh sought damages arising from Frank's death in a Christmas Eve 2002 house fire that also killed another of LaGrone's minor sons (Frank's half-brother) and a third child, a friend of the LaGrone children, who was spending the night. The summary judgment was based solely on LaGrone's affirmative defense of parental immunity. Sepaugh argues that the district court erred in granting summary judgment because parental immunity does not bar her claims. We will affirm the judgment.

---

[1] This cause was reassigned to this panel on March 25, 2009.

## BACKGROUND

Frank[2] was the only child of an approximately three-year marriage between Sepaugh and LaGrone that ended, the record reflects, in a contentious divorce. Sepaugh was awarded sole managing conservatorship of Frank, while LaGrone was named possessory conservator and awarded visitation rights. In the intervening years, LaGrone remarried and had two more sons, Cole and Sam.[3] After this marriage also ended in divorce, LaGrone was named Sam and Cole's managing conservator. At the time of the fire, Sam and Cole were living with their father in a two-story, four-bedroom house located in northwest Austin. Three bedrooms—two of which the boys occupied—were located upstairs,[4] while a master bedroom, where LaGrone slept, was located downstairs. Meanwhile, Frank lived with his mother, Sepaugh, subject to LaGrone's visitation rights.

The fire occurred during the early morning hours of December 24, 2002—Christmas Eve. Frank, then thirteen years of age, was spending the Christmas holidays with his father and younger half-brothers during a visitation period provided under LaGrone and Sepaugh's divorce decree. A friend of the brothers, John Overby, was also spending the night. Frank, Cole, and Overby stayed upstairs, while Sam fell asleep downstairs in LaGrone's room. LaGrone was awakened by the fire around the 3 o'clock hour. He and Sam managed to escape the burning dwelling through a window. LaGrone instructed Sam to call 911, which he did, while

---

[2] Because they share the surname LaGrone, we refer to Frank and his siblings by their first names to distinguish them from their father. We refer to the parties by their surnames.

[3] Sepaugh apparently also remarried and had at least one other child.

[4] A nanny, who was not present on the evening of the fire, used the third upstairs bedroom.

LaGrone, and later first responders, attempted to rescue the boys upstairs. They were unsuccessful, and Frank, Cole, and Overby all perished in the fire.

Sepaugh, acting individually and as Frank's next friend, sued LaGrone for damages under the wrongful-death and survivorship statutes. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 71.001-.012 (wrongful death), .021-.022 (survivorship) (West 2008). She also asserted what she styled as an "independent" "loss of consortium action against Defendant under Texas common law." Sepaugh pled theories of negligence and negligence per se. Specifically, she alleged that LaGrone had a duty under City of Austin ordinances to have smoke detectors that were audible in all sleeping areas of his home, that he breached this duty, and that such breach was a proximate cause of Frank's death.

LaGrone filed an answer raising parental immunity as an affirmative defense. He subsequently filed a "traditional" summary-judgment motion in which he sought to establish each element of his parental-immunity defense as a matter of law. The district court granted LaGrone's motion and rendered judgment that Sepaugh take nothing on her claims. This appeal followed.

**ANALYSIS**

In a single issue, Sepaugh contends that the district court erred in granting summary judgment based on LaGrone's parental-immunity defense. She asserts four arguments as to why, she contends, parental immunity does not bar her claims. Her first and principal argument is that parental immunity, as a matter of law, does not bar her claims because they are predicated on LaGrone's breach of a duty imposed by city ordinance rather than the sort of discretionary parenting decision that parental immunity protects. In the alternative, Sepaugh urges that we apply two

3

limitations on parental immunity that certain other states have recognized but Texas, to date, has not: (1) parental immunity does not protect LaGrone because he was not awarded "primary custody" of Frank; and (2) parental immunity does not apply because LaGrone had homeowner's liability insurance coverage. Finally, in the further alternative, Sepaugh argues that even if parental immunity barred Frank's right to recover from LaGrone (and, thus, barred her derivative right to recover under the wrongful-death and survivorship statutes), the defense does not bar her own "independent" "common law" parental-consortium claim.

**Standard of review**

We review the district court's summary-judgment ruling de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). A party moving for summary judgment must demonstrate that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). Where, as here, a defendant moves for summary judgment under the "traditional" standard, he must meet the initial burden of either conclusively negating at least one essential element of each of the plaintiff's causes of action or conclusively establishing each element of an affirmative defense. *Science Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997). If the defendant meets this initial burden, he is entitled to summary judgment unless the non-movant plaintiff presents summary-judgment evidence raising a genuine issue of material fact as to one of the elements at issue. *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23

(Tex. 2000) (per curiam). When reviewing a summary judgment, we take as true all evidence favorable to the non-movant, and indulge every reasonable inference and resolve all doubts in her favor. *Id.*; *Nixon*, 690 S.W.2d at 549.

**Parental immunity**

As recognized in Texas today, the affirmative defense of parental immunity operates to shield parents from tort liability to their unemancipated minor children for alleged acts of negligence that "involve a reasonable exercise of parental authority" (e.g., disciplining or supervising a child) or the exercise of "ordinary parental discretion with respect to the care and necessities of the child" that a parent is obligated to furnish. *See Jilani v. Jilani*, 767 S.W.2d 671, 672-73 (Tex. 1988); *Felderhoff v. Felderhoff*, 473 S.W.2d 928, 933 (Tex. 1971). The defense likewise bars such claims against a parent that are derivative of a deceased child's right to recover in negligence against the parent, including wrongful-death or survivorship claims. *See McCullough v. Godwin*, 214 S.W.3d 793, 799-803 (Tex. App.—Tyler 2007, no pet.); *Hoffmeyer v. Hoffmeyer*, 869 S.W.2d 667, 668-69 (Tex. App.—Eastland 1994, writ denied); *see also Shoemake v. Fogel, Ltd.*, 826 S.W.2d 933, 935 (Tex. 1992) (contribution claim).

The purpose and effect of the parental-immunity defense is to remove, as a matter of policy or prudence, certain parenting decisions from the judicially created regulatory regime that is the negligence tort.[5] Although historically rooted in judicial reluctance to encourage adversarial

---

[5] *See, e.g.*, *Humble Sand & Gravel, Inc. v. Gomez*, 146 S.W.3d 170, 182 (Tex. 2004) (illustrating how courts, through the common-law negligence tort, regulate conduct through the imposition of liability tied to duty concepts whose existence derives from "social, economic, and political" considerations that entail balancing "the risk, foreseeability, and likelihood of injury

5

litigation that could undermine peace and order within families, the modern justification for parental

immunity in Texas is stated in terms of preventing the disruption or distortion of parental decision-

making within the "wide sphere of reasonable discretion which is necessary . . . to provide nurture,

care, and discipline for their children" that would otherwise result from the imposition of the

negligence "reasonably prudent person" standard of conduct and its attendant economic incentives

and disincentives. *See Shoemake*, 826 S.W.2d at 935 (quoting *Felderhoff*, 473 S.W.2d at 933). As

the Texas Supreme Court explained in *Felderhoff*, in rejecting calls to discard parental immunity as

"out of date":

> We trust that it is not out of date for the state and its courts to be concerned with the welfare of the family as the most vital unit in our society. We recognize that peace, tranquility and discipline in the home are endowed and inspired by higher authority than statutory enactments and court decisions. Harmonious family relationships depend on filial and parental love and respect which can neither be created nor preserved by legislatures or courts. The most we can do is to prevent the judicial system from being used to disrupt the wide sphere of reasonable discretion which is necessary in order for parents to properly exercise their responsibility to provide nurture, care, and discipline for their children. These parental duties, which usually include the provision of a home, food, schooling, family chores, medical care, and recreation, could be seriously impaired and retarded if parents were to be held liable to lawsuits by their unemancipated minor children for unintentional errors or ordinary negligence occurring while in the discharge of such parental duties and

---

against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, . . . the consequences of placing the burden on the defendant. . . . [and] whether one party would generally have superior knowledge of the risk or a right to control the actor who caused the harm") (quoting *Praesel v. Johnson*, 967 S.W.2d 391, 397-98 (Tex. 1998)); *see also* Prosser and Keeton on the Law of Torts (W. Page Keeton, et. al., 5th ed. 1984) § 32, at 173 ("It . . . is fundamental that the standard of conduct which is the basis of the law of negligence is usually determined upon a risk-benefit form of analysis: by balancing the risk, in the light of the social value of the interest threatened, and the probability and extent of the harm, against the value of the interest which the actor is seeking to protect, and the expedience of the course pursued.").

responsibilities. It is in this sphere of family relations between parent and child that the rule of immunity from litigation continues to find justification and validity.

473 S.W.2d at 933. Relatedly, the parental-immunity defense also reflects a goal of avoiding judicial entanglement with or second-guessing of the myriad religious, cultural, and other personal considerations that come to bear on one's judgments when exercising parental responsibilities. *Shoemake*, 826 S.W.2d at 936 ("The discharge of parental responsibilities, such as the provision of a home, food and schooling, entails countless matters of personal, private choice. In the absence of culpability beyond ordinary negligence, those choices are not subject to review in court."); *see also Jilani*, 767 S.W.2d at 673 (referencing judicial reluctance to "substitut[e] judicial discretion for parental discretion in the care and rearing of minor children").

The elements of the parental-immunity affirmative defense are: (1) the injured party is an unemancipated minor; (2) the defendant is the minor's parent; (3) the minor's alleged injury is a personal injury; (4) the claim is based on the defendant's alleged negligence; and (5) the minor's alleged injury arises from the defendant's "reasonable exercise of parental authority," such as disciplining or supervising a child, or the parent's exercise of "ordinary parental discretion with respect to provisions for the care and necessities of the child" that the parent was required to provide. *See Shoemake*, 826 S.W.2d at 935-36; *Jilani*, 767 S.W.2d at 672-73; *Felderhoff*, 473 S.W.2d at 933. Thus, parental immunity does not bar claims predicated on legal duties other than negligence duties, such as contract or property rights. *See Jilani*, 767 S.W.2d at 672. Similarly, it does not limit the State's enforcement of statutory protections of children, such as those provided under the penal code or family code, or bar suits for intentional torts committed by a parent against

7

his child.  *See id.*; *see also McCullough*, 214 S.W.3d at 801 (parental immunity does not apply to a "willful, malicious, or intentional wrong" committed by a parent against a child).  Additionally, the Texas Supreme Court has recognized two "exceptions" to parental immunity permitting child-parent negligence claims for acts and omissions arising from activities it has distinguished from the "essentially parental" acts and decisions that parental immunity is intended to protect:  (1) acts "outside a normal family relationship," such as an employer-employee relationship between the parent and child, *see Felderhoff*, 473 S.W.2d at 933; *Hall v. Martin*, 851 S.W.2d 905, 909 (Tex. App.—Beaumont 1993, writ denied); and (2) the parent's operation of a motor vehicle, *see Jilani*, 767 S.W.2d at 673; *see also McCullough*, 214 S.W.3d at 801 (stating that parental immunity does not apply when a parent "abandons or abdicates his parental responsibility").

However, it is established that parental immunity *does* protect a parent's performance of "essentially parental activities," including, for example, matters of (1) supervision, (2) discipline, (3) provision of a home, (4) provision of food, (5) schooling, (6) medical care, (7) recreation, and (8) family chores.  *See Felderhoff*, 473 S.W.2d at 933; *see also, e.g.*, *Shoemake*, 826 S.W.2d at 936 (parental immunity barred claim for negligent supervision of child who drowned); *McCullough*, 214 S.W.3d at 802 (same); *Hoffmeyer*, 869 S.W.2d at 668 (parental immunity barred claim that parent was negligent in supervising child when parent left loaded gun in room); *Gem Homes, Inc. v. Contreras*, 861 S.W.2d 449, 459 (Tex. App.—El Paso 1993, writ denied) (parental immunity barred negligence claims arising from mother's decisions to live with her children in unsecured mobile home "during thunderstorm season" and to remain there with the children when storm

8

threatened); *Hall*, 851 S.W.2d at 909-10 (parental immunity barred claim that parent was negligent in entrusting motor scooter to child without instructions or helmet).

In support of his summary-judgment motion, LaGrone presented evidence that: (1) Frank was an unemancipated minor when he died; (2) LaGrone was Frank's father; (3) Frank died from personal injuries he received in the fire; (4) Sepaugh's claims are based on the allegation that LaGrone's negligence caused Frank's injuries and death; and (5) at the time of the fire, Frank was staying with LaGrone pursuant to the visitation schedule set forth in LaGrone's divorce decree with Sepaugh, during which time the decree required LaGrone to comply with the "duty of care, control, protection, and reasonable discipline" and "duty to provide [Frank] with clothing, food, and shelter." LaGrone argued that this evidence established each element of his parental-immunity defense as a matter of law. *See Shoemake*, 826 S.W.2d at 935; *Jilani*, 767 S.W.2d at 672-73; *Felderhoff*, 473 S.W.2d at 933. Regarding the fifth and last element—whether Frank's death arose from LaGrone's "reasonable exercise of parental authority" or "ordinary parental discretion with respect to the care and necessities of the child"—LaGrone contended that his evidence established that Frank's death arose from LaGrone's exercise of parental discretion in providing the child a home and shelter, as he was legally obligated to do during the visitation period.

In response, Sepaugh did not controvert the facts presented by LaGrone or dispute that LaGrone met his summary-judgment burden as to the first four elements of his parental-immunity defense—i.e., that Frank was a minor, LaGrone was Frank's parent, Frank died from personal injuries, and Sepaugh's claims were based on LaGrone's alleged negligence. However, she joined issue as to the final element, disputing whether, as a matter of law, Frank's death should be

9

considered to have arisen from LaGrone's exercise of parental discretion in providing Frank a home during the visitation period. Whatever discretion LaGrone possessed in regard to providing Frank a home, Sepaugh urged, was limited by City of Austin ordinances governing smoke detectors in residences. Specifically, Sepaugh referenced provisions of the 1997 Uniform Fire Code that the City had adopted in April 2000 and which were in effect at the time of the fire. *See* Austin, Tex., Ordinance No. 000406-78 (April 6, 2000); Austin, Tex., City Code art. 7, §§ 25-12-171, 25-12-172 (2000); Uniform Fire Code Appendix 1-A (1997). The 1997 Uniform Fire Code provides that existing "dwelling units . . . shall be provided with smoke detectors." *Id.* at Appendix 1-A § 6.1 (1997).[6] It further requires that "[d]etectors shall sound an alarm audible in all sleeping areas of the dwelling unit where they are located." *Id.* at Appendix 1-A § 6.3 (1997).[7] Sepaugh maintained that LaGrone had no discretion, parental or otherwise, to fail to provide or maintain smoke detectors complying with these ordinances. Consequently, she reasoned, her negligence claims, which were predicated on LaGrone's violation of the ordinances, did not arise from LaGrone's exercise of parental discretion.

Sepaugh brings these contentions forward on appeal, urging that, "[a]s a matter of law, because Sepaugh alleges that LaGrone failed to maintain a smoke detector as required by

---

[6] The 1997 Uniform Fire Code defines "dwelling unit" as "any building or portion thereof which contains living facilities, including provisions for sleeping, eating, cooking and sanitation as required by the Building Code, for not more than one family, or a congregate residence of 10 or less persons." Uniform Fire Code art. 2, § 205 (1997).

[7] Sepaugh also presented evidence in an attempt to raise fact issues as to whether LaGrone had complied with the ordinances; specifically, whether two battery-powered smoke detectors located in LaGrone's house—one upstairs, one downstairs—had sounded audibly on the night of the fire, or had not sounded at all, perhaps due to LaGrone's failure to change the batteries.

ordinance [and] had no discretion with regard to maintaining smoke detectors that sound an audible alarm, the doctrine of parental immunity does not bar Sepaugh's actions against LaGrone." In her briefing, Sepaugh frequently phrases her argument in terms of the fact that she is alleging LaGrone was negligent per se in violating the ordinances. To the extent that Sepaugh is suggesting that an allegation of negligence per se in itself precludes the application of parental immunity, we reject that notion. Negligence per se merely refers to the judicial adoption of a legislatively defined standard of conduct as defining the reasonably prudent person's standard of care. *See Moughon v. Wolf*, 576 S.W.2d 603, 604 (Tex. 1978). Consequently, even assuming that negligence per se applies here such that the ordinances supply LaGrone's standard of care for purposes of negligence liability, *see Perry v. S.N.*, 973 S.W.2d 301, 304-09 (Tex. 1998) (discussing standards governing applicability of negligence per se), parental immunity, if otherwise applicable, would still bar Sepaugh's negligence claims. *See Hall*, 851 S.W.2d at 908-10 (applying parental immunity to bar both "pure" negligence and negligence per se claims). What matters instead is whether, as Sepaugh suggests, the Austin smoke-alarm ordinances have the legal effect of reducing the scope of LaGrone's "discretion" in a manner relevant to his parental-immunity defense. We disagree that the ordinances have this effect for two related reasons.

First, regardless of how Sepaugh couches her allegations, it remains that she complains about where and how LaGrone provided a home and shelter for Frank during the child's Christmastime visitation. LaGrone's decision to allow Frank to stay in his house is the sort of "essentially parental" judgment that parental immunity protects. *See Shoemake*, 826 S.W.2d at 936 ("The discharge of parental responsibilities, *such as the provision of a home*, . . . entails countless

11

matters of personal, private choice. In the absence of culpability beyond ordinary negligence, those choices are not subject to review in court.") (emphasis added); *Felderhoff*, 473 S.W.2d at 933 ("These parental duties, which usually include *the provision of a home*, . . . could be seriously impaired and retarded if parents were to be held liable to lawsuits by their unemancipated minor children for unintentional errors or ordinary negligence occurring while in the discharge of such parental duties and responsibilities.") (emphasis added). This is so regardless of the existence of any code violations in his house that LaGrone allegedly knew or should have known about. LaGrone's decision that Frank would stay in the house is akin to a parent's opting to stay with his child in a hotel, to take the child camping in the woods, or to allow the child to spend the night at a friend's house—any of which have the potential to expose the child to premises defects or other hazards at that location. Parental immunity, at its core, is intended to prevent judicial second-guessing, through the negligence regulatory regime, of a parent's judgment in assessing such risks and balancing them with the myriad other "personal, private" considerations that inform parenting decisions. *Shoemake*, 826 S.W.2d at 936; *see Gem Homes, Inc.*, 861 S.W.2d at 459 (mother's decisions to continue living "with her family in the unanchored [mobile] home during thunderstorm season, and remaining with her children in that home on one particular afternoon when she knew a storm threatened" were "personal parental choices" that "fall within the ambit of parental care and supervision"); *see also Hoffmeyer*, 869 S.W.2d at 668 (parental immunity barred claim that parent was negligent in supervising child when parent left loaded gun in room).

Second, we conclude that Texas precedent does not support Sepaugh's argument concerning the implications of the Austin smoke-detector ordinances for LaGrone's parental

12

immunity. In asserting that the ordinances limit LaGrone's "discretion" in a manner relevant to the parental-immunity defense, Sepaugh relies primarily on language in *Jilani*. 767 S.W.2d at 672-73. In *Jilani*, a mother filed a personal-injury suit on behalf of her three unemancipated minor children seeking damages arising from an automobile accident allegedly caused by their father's (the driver's) negligence. The father obtained summary judgment based on parental immunity, which the court of appeals affirmed. The supreme court reversed. It reasoned that the mother's claims implicated not the "reasonable exercise of parental authority or the exercise of ordinary parental discretion" protected by parental immunity, but the "general obligation the law imposes upon every driver of an automobile . . . an activity not *essentially* parental." *Id.* at 673. This was so, the court further held, even though the family had been traveling on vacation and *Felderhoff* had suggested that "recreation" was one of the several parental duties that ordinarily should be beyond the judicial sphere. *Id.*; *see Felderhoff*, 473 S.W.2d at 933. "Regardless of the purpose of the automobile excursion," according to the *Jilani* court, "this case does not involve the 'reasonable exercise of parental authority or the exercise of parental discretion' as envisioned in *Felderhoff*." *Jilani*, 767 S.W.2d at 673.

Sepaugh views *Jilani* as standing for a general principle that the scope of parental discretion and immunity is limited by "general" statutory or regulatory obligations with which a parent, like other persons, must comply. Consequently, she reasons, LaGrone's parental discretion is limited by Austin city ordinances governing smoke alarms in residences. We disagree that *Jilani* extends so broadly. The *Jilani* court, while perceiving that child-parent automobile negligence claims would not "threaten 'parental authority or discipline' nor . . . risk substituting judicial

13

discretion for parental discretion in the care and rearing of minor children," *id.*, took pains to emphasize that "[o]ur holding today is limited to the facts before us: an automobile tort action brought by an unemancipated minor child against a parent." *Id.*

To date, neither the Texas Supreme Court nor lower Texas courts have extended *Jilani*'s rationale beyond the narrow facts to which it was addressed, much less applied it as expansively as Sepaugh proposes. Sepaugh's argument that LaGrone's parental discretion and immunity is limited by the Austin smoke-detector ordinances would seemingly imply that every other conceivable local or municipal regulatory prohibition or requirement—building codes, environmental regulations, watering restrictions, etc.—would have the same effect.[8] Stated another way, it would imply that the Texas Supreme Court in *Jilani* effectively ceded control of future development of common-law negligence principles and their application to parenting decisions to whatever governmental bodies might enact some form of "mandatory" restrictions or regulations. We find no support for that notion in *Jilani* or other Texas precedents addressing parental immunity. It is also inconsistent with the supreme court's view of legislative conduct standards as a basis for negligence liability that is reflected in its application of negligence per se. In that context, the court has not categorically adopted or deferred to legislative conduct standards, but engaged in a careful, multi-factor analysis of whether the common law should incorporate those standards as a basis for negligence liability. *See Perry*, 973 S.W.2d at 304-09 & n.4.

---

[8] E.g., a personal-injury negligence claim arising from a child's slip-and-fall on a sidewalk made wet by a parent's sprinkler system seemingly could be pled to circumvent parental immunity if couched in terms of the parent's violation of city watering restrictions.

14

Nor do we believe that *Jilani*'s rationale, or the similar reasoning employed in *Felderhoff* regarding parent-child employment relationships, would extend to Sepaugh's complaint regarding the smoke alarms in LaGrone's house. Sepaugh's complaint implicates LaGrone's judgment and actions in regard to the quality or safety of the home he provided Frank. It thus squarely attacks essentially parental actions and judgments in providing Frank a home, a core concern of the parental-immunity defense. *See Shoemake*, 826 S.W.2d at 936; *Felderhoff*, 473 S.W.2d at 933; *Gem Homes, Inc.*, 861 S.W.2d at 459. A complaint that a parent is a bad driver or bad employer, by contrast, has a more attenuated relationship to parental immunity's underlying judicial policies. *See Shoemake*, 826 S.W.2d at 936; *Felderhoff*, 473 S.W.2d at 933.

Through her argument concerning the Austin smoke-detector ordinances, Sepaugh ultimately advocates a significant expansion of negligence liability for parenting decisions in Texas. We are not at liberty to change Texas law in this manner. *See Petco Animal Supplies, Inc. v. Schuster*, 144 S.W.3d 554, 565 (Tex. App.—Austin 2004, no pet.) ("As an intermediate appellate court, we are not free to mold Texas law as we see fit but must instead follow the precedents of the Texas Supreme Court unless and until the high court overrules them or the Texas Legislature supersedes them by statute.").

We must similarly reject Sepaugh's remaining arguments challenging the district court's summary judgment. Citing cases from Missouri, Florida, and Arizona, Sepaugh argues that parental immunity is inapplicable because she was awarded primary custody in the divorce and because LaGrone had homeowner's liability insurance coverage. *See Fugate v. Fugate*, 582 S.W.2d 663, 668-69 (Mo. 1979) (primary custody); *Ard v. Ard*, 414 So.2d 1066, 1068

15

(Fla. 1982) (homeowner's insurance); *Streenz v. Streenz*, 471 P.2d 282, 284 (Ariz. 1970) (homeowner's insurance). These cases do not reflect the law in Texas. *See Hall*, 851 S.W.2d at 910 (rejecting the insurance argument because "[l]iability insurance cannot vitiate the parental immunity doctrine"); *see also Petco, Inc.*, 144 S.W.3d at 565.

As for Sepaugh's final argument that parental immunity does not bar her "independent" "common law" parental-consortium claim because it is based solely on her own injuries and is not derivative of Frank's claims, the Texas Supreme Court has held that there is no common-law cause of action for damages arising from a tort victim's death. *See, e.g.*, *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 356 & n.7 (Tex. 1990); *see also Kramer v. Lewisville Mem'l Hosp.*, 858 S.W.2d 397, 403 & n.5 (Tex. 1993). Instead, Sepaugh can recover her loss-of-consortium damages solely under the wrongful-death statute. *Moreno*, 787 S.W.2d at 356. Under the wrongful-death statute, Sepaugh's right to recover depends on whether Frank would have been entitled to bring an action against LaGrone if Frank had lived. *See* Tex. Civ. Prac. & Rem. Code Ann. § 71.003(a). Consequently, because Frank's right to recover against LaGrone is barred by parental immunity, Sepaugh's parental-consortium claim is barred as well. *Hoffmeyer*, 869 S.W.2d at 68-69.

We conclude that the district court did not err in granting summary judgment to LaGrone on his parental-immunity defense. We overrule Sepaugh's issue.

## CONCLUSION

Having overruled Sepaugh's issue, we affirm the district court's judgment.

_____

Bob Pemberton, Justice

Before Chief Justice Jones, Justices Pemberton and Waldrop;
    Dissenting Opinion by Chief Justice Jones

Affirmed

Filed:   August 28, 2009

17